## In re LAKELAND DEVELOPMENT CORPORATION, Debtor.

**Dwight R.J. LINDQUIST, Trustee of the Bankrupt Estate of Lakeland Development Corporation, Inc., Plaintiff,**

v.

**FIRST NORTHTOWN NATIONAL BANK and Spring Lake Park Partnership, a General Partnership, Defendants.**

**Bankruptcy No. 4–82–2102.
Adv. No. 4–84–196.**

United States Bankruptcy Court,
D. Minnesota.

March 11, 1985.

James A. Lundberg, Minneapolis, for plaintiff.

Joseph H. Anderson, Dorsey & Whitney, Minneapolis, for defendants.

## ORDER APPROVING SETTLEMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on February 27, 1985, on the motion of the trustee to approve a settlement of this adversary proceeding. Dwight R.J. Lindquist, the trustee, appeared *in propria persona* and by his attorney, James A. Lundberg. Joseph H. Andersen appeared on behalf of the defendants, First Northtown National Bank (bank) and Spring Lake Park Partnership (partnership). Walter Anderson (Anderson) appeared *pro se*. Christopher A. Elliott appeared on behalf of Precision Graphics, Inc., J.T. Nelson and William H. Burns (secured creditors). Thomas A. Roe appeared on behalf of the debtor.

## BACKGROUND

The debtor Lakeland Development Corporation, Inc., was formerly the owner of Lots 2, 3 and 4, Block One, Middletown, Anoka County, Minnesota (land). The bank held a first mortgage on this land. Lakeland defaulted on its obligations under the mortgage and the bank foreclosed. A foreclosure sale was held on November 23, 1981. That sale resulted in the issuance of a sheriff's certificate of sale of the land to the bank. The partnership held two junior mortgages on the land and has now purchased it from the bank. Lakeland did not redeem the land. On November 22, 1982, the last day of the statutory redemption period, Lakeland filed a petition under 11 U.S.C. Chapter 11.

On January 20, 1983, the debtor filed an adversary proceeding (ADV 4–83–33) in which it sought an injunction against the bank's continuation with its foreclosure. Specifically, the debtor requested that the running of the statutory redemption period be tolled or extended for "a sufficient period of time to enable the plaintiff to carry out its proposed reorganization plan." Complaint at 4, para. 3. On January 20,

1983, Judge Owens granted the debtor's request for a temporary restraining order against any activity by the bank to perfect the foreclosure. On February 16, 1983, however, Judge Owens dissolved that temporary restraining order and denied the debtor's request for an injunction. Judge Owens held that the stay imposed by 11 U.S.C. § 362 does not operate to toll or suspend the mere running of time incident to a period of redemption afforded by state law. While Judge Owens' order recognized that 11 U.S.C. § 105 gives the Court general equitable powers to intervene, he held that such relief is only available where very compelling equities exist. Judge Owens held that the mere inability to pay the sum required for redemption and the existence of some excessive value over the mortgage amount does not create grounds for intervention. Finally, Judge Owens held that while 11 U.S.C. § 108 provides a statutory extension of time to cure defaults, that extension is only for 60 days following the entry of the order for relief and that at the time of his order that period had expired so that it was unnecessary to determine whether the default envisaged by § 108 was sufficiently broad to include payment in redemption or merely the default which precipitated the mortgage foreclosure.[1] *First Northtown National Bank v. Lakeland Development Corp.* (*In re Lakeland Development Corp.*), ADV 4–83–33 (Bktcy.Minn. Feb. 16, 1983).

On March 31, 1983, the parties to the adversary proceeding entered into a stipulation in lieu of an appeal of Judge Owens' February 16, 1983 order. The stipulation was signed by Anderson, as president of both the debtor and the debtor in possession and by representatives of the bank and the partnership. On March 31st Judge Owens entered an order approving the stipulation.

The March 31, 1983 stipulation provides, among other things, that "the Debtor's statutory right to redeem the Land was extinguished by the running of the statutory redemption period and the order of the Bankruptcy Court dated February 16, 1983." March 31, 1983 stipulation at para. 2(ii) (Stip.). *See also*, March 31, 1983 order approving stip. at para. 2. (Order). The stipulation also provides that Lakeland,

> admits and agrees that its redemption period has expired and that it may no longer redeem the Land... The Debtor further admits and agrees that the Bank was conveyed all right, title and interest of the Debtor in and to the Land, with the benefit of the priority of the mortgage held by the Bank, by virtue of the foreclosure and expiration of all applicable redemption periods, without any other conveyance, and that the Bank now has and is entitled to exclusive possession of the Land. In confirmation of the foregoing, *the Debtor hereby grants, bargains, quitclaims and conveys unto the Bank any right, title or interest the Debtor may have in the Land as of the date of this Stipulation.*

*Stip.* at para. 5. (Emphasis supplied).

Lakeland did not appeal either the February 16th or the March 31, 1983 orders; thus they both became final.

As part of the stipulation and order the bank granted Lakeland an option to purchase the land. Paragraph 6 of the stipulation among the parties provides,

> In consideration of the Debtor's agreement to this Stipulation and not to appeal the February 16, 1983 Order, the Bank agrees to grant the Debtor an exclusive option to purchase the Land on the terms and conditions set forth in and substantially in the form of Exhibit B attached hereto. Said option agreement will be executed by the Bank immediately upon approval of the Stipulation by the Bankruptcy Court.

---

**1.** While the issues decided by Judge Owens were unsettled at the time of his order, the Eighth Circuit subsequently, in an unrelated case, resolved these issues in substantially the same way as Judge Owens. *See Johnson v. First National Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

The option expired by its terms on August 31, 1983.[2] Lakeland did not tender payment to the bank pursuant to the option. On the last day of the option period, Lakeland attempted to get from the Bankruptcy Court an extension of the option, stating that on the morning of August 31, 1983, a potential buyer had agreed to provide the funds but could not provide them in time or in the manner necessary to prevent the expiration of the option. Judge Owens refused to extend the option. *See* Transcript of Hearing, August 31, 1983, at 2–3, 9–10.

On August 17, 1983, Walter R. Anderson, Lakeland's president and sole shareholder, filed a complaint against the bank and the partnership in Anoka County District Court, Tenth Judicial District of Minnesota. Anderson was represented by James A. Lundberg. Anderson alleged that, as a consequence of the stipulation and order, he had a personal interest in the land that secured an equitable mortgage, and therefore that interest could not be extinguished without a foreclosure action.[3] Anderson also alleged he had been injured by alleged breaches by the bank of the contract evidenced by the stipulation and order and by alleged fraud, misrepresentation, interference with contractual rights, and breaches of fiduciary duty with respect to that contract. On June 8, 1984, following the removal of the State Court action to the Bankruptcy Court and its subsequent remand by the Bankruptcy Court to the Anoka County District Court, Anderson's complaint was dismissed with prejudice for failure to state a claim upon which relief could be granted. *See Anderson v. First Northtown National Bank*, No. B–54204 (10th Dist.Minn., June 8, 1984). The Anoka

County District Court characterized Anderson's Complaint as

> an unconscionable attempt ... to retain an interest in ... land long after his company exhausted the statutorily prescribed remedies available under Minnesota real estate law and the United States Bankruptcy Code. The plaintiff's arguments in this respect are clearly without merit.

*Anderson v. First Northtown National Bank, supra* at p. 1 of Memorandum. The district court also found as fact that "Neither Lakeland nor Anderson made or tendered any payments to the Bank pursuant to the option." *See* Finding of Fact 14. The district court order was appealed by Anderson and affirmed. *Anderson v. First Northtown National Bank*, 361 N.W.2d 116 (Minn.App.1985).

On November 8, 1983, on the motion of the partnership Lakeland's Chapter 11 case was dismissed. That order was based *inter alia* on a finding that the land had "since been lost to the estate through foreclosure and title to that property vested in First Northtown National Bank which held a first mortgage on the property." *In re Lakeland Development Corp.*, BKY 4–82–2102 (Bktcy.Minn. Nov. 8, 1983). That finding of fact was not challenged on appeal, and following the reversal of the order for dismissal by the District Court and remand to this Court, an identical finding of fact was made in an order converting Lakeland's bankruptcy case from a case under Chapter 11 to a case under Chapter 7. Although Lakeland has appealed the conversion order, it did not challenge the finding of facts relating to its interest in the land.[4]

---

2. The option agreement is not part of the record in this adversary proceeding. According to other evidence submitted, however, the option granted the debtor had very specific performance provisions and expired on August 31, 1983. *See* Transcript of Hearing, August 31, 1983.

3. The attorney representing the trustee in this adversary proceeding, represented Anderson in the state court proceeding. *See* 11 U.S.C. §§ 327 and 328(b).

4. The partnership originally appealed from the November 8, 1983 order dismissing the case. The stated issues on that appeal were,

> "1) Did the Bankruptcy Judge err in holding that the bankruptcy court had the power to dismiss this Chapter 11 proceeding in response to a motion seeking conversion of the proceeding to a Chapter 7 liquidation proceeding, without notice or hearing on the issue of dismissal?

Following the order converting Lakeland's case, Dwight R.J. Lindquist, the plaintiff in this action, was appointed as trustee of Lakeland's bankruptcy estate. The trustee was contacted by Anderson and his attorney about possible claims against the bank and the partnership. They did not tell the trustee about the adverse decision in state court. On October 29, 1984, a summons and complaint initiating a lawsuit in Anoka County District Court were served by the trustee on the bank and the partnership. The bank and the partnership jointly removed the action to the Bankruptcy Court on November 7, 1984. An amended summons and complaint still captioned and filed in the state court were served on the bank and the partnership on November 13, 1984. In his complaint, the trustee raises arguments similar to those previously raised by Anderson in his state court action. On January 11, 1985, I dismissed three of the four counts in the trustee's complaint. The trustee and the defendants appealed. Notices of appeal were also filed by Anderson and by the secured creditors.

The trustee has now reached a settlement with the defendants and seeks approval of the settlement under Bankruptcy Rule 9019(a) which provides:

> On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other persons as the court may designate, the court may approve a compromise or settlement.

The settlement basically provides for mutual dismissals of the appeals and the adversary proceeding and mutual release of all claims.

## APPROVAL OF SETTLEMENTS

▮ The proposed settlement agreement is before the Court on the trustee's motion pursuant to Bankruptcy Rule 9019(a). Rule 9019(a) gives the Court broad authority in approving compromises or settlements. *Official Creditors Committee v. Beverly Almont Co. (In re General Store of Beverly Hills)*, 11 B.R. 539, 542 (Bktcy.App. 9th Cir.1981); *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.)*, 28 B.R. 176, 177 (Bktcy.D. Me.1983). "The determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge.". *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.)*, 13 B.R. 764, 765 (Bktcy.N.D.Ga.1981). *See also River City v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–603 (5th Cir. 1980); *American Employers' Insurance Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir.1977); *Knowles v. Putterbaugh (In re Hallet )*, 33 B.R. 564 (Bktcy. D.Me.1983); *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.)*, 28 B.R. 176, 177 (Bktcy.D.Me.1983). The Court should approve a compromise after considering all factors involved, only if it is in the best interest of the estate. *Knowles v. Putterbaugh (In re Hallet )*, 33 B.R. 564, 565 (Bktcy.D.Me.1983); *In re Haas Davis Packing Co.*, 2 B.C.D. 167, 168 (Bktcy.S.D. Ala.1975).

▮ The factors the Bankruptcy Court is to consider when reviewing proposed settlements or compromises have been set out by

2) Did the Bankruptcy Court err in determining that dismissal rather than conversion was in the best interest of creditors in the estate?" Spring Lake Park Partnership's Designation of Record and Statement of Issues on Appeal, BKY 4–82–2102, Nov. 25, 1983.
The district court reversed my November 8, 1983 order and remanded the matter. I subsequently converted the case from a case under Chapter 11 to a case under Chapter 7. The debtor has appealed the August 8, 1984 conversion order. The stated issues in that yet undecided appeal are:

"1) Did the Bankruptcy Court err in determining that conversion rather than dismissal was in the best interest of the creditors and the estate?
2) Did the Bankruptcy Court err in not finding that Spring Lake Park Partnership has standing as a creditor in this proceeding?" Lakeland Development Corporation's Designation of Record and Statement of Issues on Appeal, BKY 4–82–2102, September 24, 1984.

the Eighth Circuit Court of Appeals in *Drexel v. Loomis,* 35 F.2d 800 (8th Cir. 1929). The *Drexel* criteria include:

(1) the probability of success in the litigation;

(2) the difficulties, if any, to be encountered in the matter of collection;

(3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(4) the paramount interests of the creditors and the proper deference to their reasonable views in the premises.[5]

*Id.* at 806. *Accord, Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); *Lands v. Ericson (In re Orrin A. Ericson),* 6 B.R. 1002 (D.Minn.1980). *See also Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.),* 28 B.R. 176, 178 (Bktcy D.Me.1983); *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* 13 B.R. 764, 765 (Bktcy.N.D.Ga.1981); *In re W.T. Grant Co.,* 10 B.R. 801, 804 (Bktcy.S.D.N.Y.1981); *In re W.T. Grant Co.,* 4 B.R. 53, 69 (Bktcy. S.D.N.Y.1980).

If I can be presumptuous, I think a fifth factor can be added to the Eighth Circuit's list:

(5) whether conclusion of the litigation promotes the integrity of the judicial system.

Finally, the Court must consider the principle that "the law favors compromise.". *Port O'Call Investment Co. v. Blair (In re Blair),* 538 F.2d 849, 851 (9th Cir.1976); *Fogg v. Sherman Homes, Inc. (In re Sher-* *man Homes, Inc.),* 28 B.R. 176, 177 (Bktcy D.Me.1983).

## PROBABILITY OF SUCCESS

I have expressed my view previously on the probability of the plaintiff's success on three of his four counts. I dismissed those three counts on the defendants' motion. Thus I have already concluded that they were without any merit and the fact that the trustee has appealed that decision does not change my mind.[6]

Count three, the remaining count of the plaintiff's complaint, is based on "interference with contract relation". Since commencement of this adversary proceeding in the state court, the trustee has discovered that Lakeland Development never actually made an offer to exercise its option and therefore he has serious doubts about the merits of count three as well. I did not dismiss count three because I did not feel that the earlier stipulation and order or the proceedings on August 31, 1983, had any *res judicata* effect on the allegations made in the plaintiff's complaint. However no facts relating to the alleged interference have ever been put in the record one way or the other, although Anderson has presented several affidavits dealing with the merits on other issues. With the history of the litigation between Lakeland and the defendants, I would be very surprised if there was any merit to count three and I suspect it is nothing more than the wishful thinking of Anderson and the product of his personal hard feelings towards the defendants and their attorneys.

In fact, at the August 31, 1983 hearing which began at 2:30 p.m. the debtor attempted to convince Judge Owens to ex-

---

5. However, "creditors' objections are not controlling and will not prevent approval." *Knowles v. Putterbaugh (In re Hallet),* 33 B.R. 564 (Bktcy.D.Me.1983); *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.),* 28 B.R. 176, 178 (Bktcy.D.Me.1983). *See also In re General Store of Beverly Hills,* 11 B.R. 539, 541 (Bktcy.App. 9th Cir.1981).

6. I note that Anderson and the secured creditors have also appealed. However I doubt that either has standing to appeal since neither is a

party to this adversary proceeding. Anderson filed a motion to intervene on November 21, 1984, but never made any arrangements with the Court to schedule a hearing on his motion. Even if he had, the motion would likely have been denied. *See Anderson v. First Northtown National Bank,* 361 N.W.2d 116 (Minn.App. 1985). The secured creditors also filed a motion to intervene and scheduled a hearing. I denied their motion on February 25, 1985.

tend the option period. No mention was ever made of any alleged interference by the bank or partnership. In fact, the debtor made it very clear at the hearing that it wanted a hearing because it simply was unable to exercise the option.

## DIFFICULTIES OF COLLECTION

The trustee and the defendants concede that this is not a consideration in the proposed settlement since the defendants are well able to pay any potential judgment.

## COMPLEXITY, EXPENSE, INCONVENIENCE AND DELAY

It is worth discussing the status of this litigation. Appeals by the plaintiff and the defendants as well as two non-parties are pending to the district court of my January 11, 1985 order of dismissal. Several things can happen as a result of those appeals.

First of all, it seems to me that the order appealed from is interlocutory and thus non-appealable as of right. *See* Bankruptcy Rule 7054(a), Fed.R.Civ.P. 54(b) and 28 U.S.C. § 158(a). Thus it is a distinct possibility that the appeals will all be dismissed and a trial held on Count Three. Appeals would then be proper. I have little doubt that if Anderson has his way appeals would then be pressed to the Court of Appeals and review beyond that sought as well.

If the district court disagrees with me and considers my earlier order final for appeal purposes or exercises its discretion to hear the appeals anyway, then there are several possibilities. Obviously it is my opinion that my earlier order is correct and would be affirmed which would then result in a trial on Count Three followed by the inevitable appeals. Another possibility, of course, is that my dismissal of Counts One, Two and Four would be affirmed and I would be reversed on my refusal to dismiss Count Three which would then conclude the entire adversary proceeding in the favor of the defendants subject again to ensuing appeals.

Obviously there is also some possibility, as remote as I might think it is, that I will be reversed on my decision to dismiss Counts One, Two and Four. The only motion decided in my earlier order was that of the defendants to dismiss. Thus the result of reversal would be a reversal of that dismissal and presumably a remand to try all four counts. It is clear to me that there is little merit to the plaintiff's complaint and the trustee has concluded that there is not.[7] Regardless of how the matter came out at trial, guaranteed appeals would follow. Thus it is fairly clear to me that if not settled, this litigation will become lengthy, complex and very expensive to both the trustee and the defendants. Nothing that either Anderson or the secured creditors suggest in their objections justifies me allowing protracted litigation by parties who have concluded that it is without merit.

## VIEWS OF CREDITORS

Three objections were made at the hearing: by Anderson, the debtor and the secured creditors. To the extent that Anderson is the sole shareholder of the debtor, there really is no difference between them for these purposes. He presumably speaks for the debtor. *Drexel* makes no mention of considering the rights of equity security holders or the debtor, although they might have something to gain from the litigation. If as successful as Anderson thinks the litigation could be, there would presumably be enough money to pay all creditors and have money left over for the debtor and therefore Anderson. 11 U.S.C. § 726(a)(6). *Drexel* provides in any case that I need give only "proper deference" to "reasonable views". I find nothing reasonable about Anderson's views. He obviously feels that he has lost much as a result of the mortgage foreclosure and is unwilling to let law, fact or reason stand in his way of pressing his views in as many forums as

---

**7.** Anderson puts much reliance on an appraisal of the land which places its value at approximately $1.1 million. However, that is a question of fact as are all of Anderson's other allegations.

he can. Because of this lack of objectivity and his status as an equity security holder, I give little deference to his views and therefore the views of the debtor.

The last objection is by the secured creditors who jointly hold a mortgage on another piece of real property which remains in the estate. The original mortgage was in the amount of $23,650.43 and is a mortgage on property worth $48,100.00. I do not know what the relationship is between the secured creditors and Anderson which would prompt them to make such a loan. However the relationship is such that Anderson was prompted to have the debtor grant a mortgage to them on the eve of the filing of the debtor's bankruptcy to secure the loan. I will assume that the objections are made by the secured creditors since they concede their mortgages are avoidable and therefore they will become unsecured creditors. Otherwise they would have no interest in the outcome of this litigation.

Because of the small amount of debt to other creditors [8] including the secured creditors as opposed to the magnitude of the proposed litigation, it is obvious that the major beneficiary of this adversary proceeding is Anderson and not the estate or creditors. I cannot find that the interest of the secured creditors outweighs the other factors which weigh heavily in favor of disposing of this adversary proceeding.

## INTEGRITY OF THE JUDICIAL SYSTEM

The current adversary proceeding was suggested to the trustee by Anderson personally and through his attorney. Perhaps the trustee was too trusting and ended up hiring Anderson's attorney to bring this current litigation. Upon reflection the trustee now realizes that his lawsuit is without merit and was being pursued by Anderson's lawyer primarily for Anderson's benefit. To his credit, the trustee now seeks to rectify his mistake. The trustee is an attorney and an experienced trustee and as such is familiar with Fed.R. Civ.P. 11 which is applicable to this proceeding by Bankruptcy Rule 9011. Rule 11 was part of the Supreme Court's reaction to the perceived abuse of the judicial system. What the objectors seek is in effect to force the trustee to proceed with litigation that he knows is without merit in contravention of the duties imposed upon him by the Bankruptcy Code, the Code of Professional Responsibility and Rule 11. Prosecution of this adversary proceeding would only result in additional cost, expense and delay to the estate and the risk involved in responding to the defendants' claims of malicious prosecution, slander of title and their claims under Minn.Stat. § 549.21 and presumably Rule 11. Contrary to the views of the objectors, these are not insubstantial claims and settlement is in everyone's best interest with the possible exception of Anderson's.

In one guise or another Anderson has managed to press his claims in five different forums. First in the guise of the debtor was the adversary proceeding brought to enjoin the running of the redemption period. The debtor was unsuccessful and threatened appeal to the district court. Although never determined on the merits in the district court, it is fairly clear that based on the later pronouncement of the Eighth Circuit that the debtor would have been unsuccessful. *See Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

Anderson then personally adopted several new theories and pressed them a third time in Anoka County District Court. Unsuccessful there, he appealed to the Minnesota Court of Appeals and was unsuccessful there. Anderson has now convinced the trustee to press his claims in a fifth forum through this adversary proceeding and has been largely unsuccessful. If the matter is now not settled, he proposes to press the matter a sixth time in the

---

**8.** Other than the claims of Anderson, the partnership is far and away the largest unsecured creditor.

district court and I have little doubt if unsuccessful there, yet again in the Court of Appeals.

While courts should all stand ready to redress reasonable grievances by those parties who feel that they have been wronged, there comes a time when the continued litigation over the same transactions must be ended. The remote possibility of some recovery does not justify burdening the judicial system any longer with this litigation.

Along those same lines I note that Anderson has written a letter (Plaintiff's Ex. 1) to his own attorney who is also the trustee's attorney, which purports to be an offer to purchase this litigation for $2,000.00 and furnish an expense bond. While the $2,000.00 would be some small benefit to the estate, it does not begin to compensate the estate for the risk of responding to the defendants' claims against the estate and the trustee, especially when the integrity of the judicial system is added to the balance.

More importantly, while the letter purports to be an offer of purchase, it is nothing more than a thinly veiled threat by Anderson to sue the trustee if he proceeds with settlement of the litigation. The trustee has not succumbed to that threat and I do not intend to either.

### ORDER

THEREFORE, IT IS ORDERED:

The settlement agreement between the parties to this adversary proceeding embodied in a stipulation dated February 7, 1985, and filed on February 8, 1985, is approved.