In re Kenneth J. (Jerry) **CARSON,** Jane I. (Irene) Carson, Debtors.

**Bankruptcy No. 2–84–00065.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 2, 1987.

Mitchel D. Cohen, Deborah S. Everson, Columbus, Ohio, for debtors.

Daniel F. Carmack, Columbus, Ohio, Chapter 7 Trustee.

Andrew J. Ruzicho, Louis A. Jacobs, Columbus, Ohio, Special Counsel to Trustee.

David R. Kelleher, Baker & Hostetler, Columbus, Ohio, for AT & T Technologies.

## ORDER GRANTING MOTION FOR AUTHORITY TO COMPROMISE

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Motion for Authority to Compromise filed by Daniel F. Carmack, the trustee in this Chapter 7 case ("Trustee") and the Objection to Motion to Compromise by Trustee filed by the debtors, Kenneth J. Carson and Jane I. Carson ("Debtor" or "Carson").[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(A). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### I. FINDINGS OF FACT

1. The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on January 9, 1984. Carson received a discharge from the Court pursuant to 11 U.S.C. § 727 on May 23, 1984.

2. At the time Carson filed his Chapter 7 petition, he was a party to a civil action in the United States District Court for the Southern District of Ohio, Eastern Division (Case No. C–2–83–933). In this civil action, which remains pending, Carson seeks recovery against his former employer, AT & T Technologies, Inc., ("AT & T"), and various employees of AT & T. Carson's cause of action is predicated upon alleged employment discrimination and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*) ("Employment Discrimination Action").

3. Prior to filing his Chapter 7 petition, Carson had retained Walter G. Brooks to represent him in prosecuting the Employment Discrimination Action. However, the Trustee sought and obtained authority to employ Andrew J. Ruzicho ("Ruzicho") to litigate the Employment Discrimination Action on a post-petition basis. Ruzicho and his associate, Louis A. Jacobs ("Jacobs") have continued the prosecution of the Employment Discrimination Action since the date of their employment (June 21, 1984) as Special Counsel to the Trustee ("Special Counsel").

4. Special Counsel, as a result of extensive negotiations with AT & T, has negotiated a proposed settlement of the Employment Discrimination Action. Under the terms of this proposed settlement, the Trustee will receive a lump-sum payment of $99,000. Further, AT & T has agreed to provide the Debtor with a "neutral" reference letter.[2] In exchange, AT & T shall receive a general release from the Trustee which essentially precludes further assertion by Carson of any and all claims which he may have as a result of his discharge by AT & T.

5. The Trustee has filed the instant Motion for Authority to Compromise ("Motion to Compromise"), seeking this Court's approval of the proposed settlement by and between the Trustee and AT & T ("Settlement"). Notice of the terms of the Settlement was provided to all parties-in-interest as required by B.R. 9019(a).[3]

6. Carson has opposed the Trustee's Motion to Compromise on the basis of his belief that the Trustee and Special Counsel have substantially underestimated the settlement value of the Employment Discrimination Action. The Debtor contends that if the $99,000 Settlement is approved, after

---

1. Because the matter before the Court involves a lawsuit which Kenneth J. Carson alone is prosecuting (*i.e.,* the debtor Jane I. Carson is not party), all future references in this decision to the Debtor shall be in the singular.

2. A neutral letter of reference was defined as a brief rendition of the beginning and ending dates of Carson's employment with AT & T as well as a description of Carson's employment

duties and responsibilities at the time of his discharge.

3. B.R. 9019(a) provides as follows:
   (a) **Compromise.** On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other persons as the court may designate, the court may approve a compromise or settlement.

administrative costs and the claims of all creditors are paid in full, a surplus of approximately $25,000 will remain to be distributed to the Debtor. On the other hand, Debtor argues that if the Employment Discrimination Case proceeds to trial, either a judgment[4] or a settlement in an amount much higher than the $99,000 Settlement will be obtained. Carson believes that this judgment or settlement will be no less than $140,000, and, possibly as high as $280,000, exclusive of attorneys' fees.

7. Trustee and Special Counsel submit that the Settlement is in the best interests of the bankruptcy estate. To support this position, Special Counsel note that AT & T has indicated that $99,000 represents the absolute upper limit it will pay to settle the Employment Discrimination Action. AT & T will proceed to a trial on the merits if an amount in excess of $99,000 is demanded to settle the Employment Discrimination Action. Special Counsel cite a number of legal and factual stumbling blocks (such as meritorious affirmative defenses that AT & T will likely raise) which Special Counsel claims will preclude the Trustee from obtaining a favorable verdict if the Employment Discrimination Action proceeds to final judgment. Debtors' counsel disputes Special Counsel's less-than-optimistic assessment of Carson's chances of prevailing at trial: she predicts that Carson has no less than a 50% chance of receiving a favorable judgment.

8. Ruzicho and Jacobs, who have over 35 years of combined experience in the litigation of employment discrimination cases, and limit their practice almost exclusively to this area, have tried and/or settled in excess of one hundred employment discrimination cases and have authored several treatises dealing with this specialty. Counsel for Carson possesses ten years of general litigation experience. She has handled no more than five (5) employment discrimination cases in her career, and has never represented a plaintiff in such litigation. Special Counsel has spent in excess of 200 hours in preparing the Employment

Discrimination Action for trial and/or attempting to negotiate a settlement of the case. Counsel for the Debtor was only recently retained, presumably for purposes of contesting the instant Motion to Compromise.

## II. CONCLUSIONS OF LAW

### A. Introduction

At the outset, the Court notes that the precise objections made by Debtor to the Motion to Compromise are somewhat difficult to extract from the rambling, and at times incomprehensible, memoranda filed by the Debtor. Nonetheless, the Court believes that three distinct arguments can be distilled from the Debtor's memoranda and the oral presentation made at the hearing of this matter. These arguments may be paraphrased in the following manner:

(1) The portion of the Settlement which constitutes compensation for lost wages accruing after the filing of the Chapter 7 petition is not property of the estate;

(2) The Settlement is not in the best interests of the estate and should not be approved; and

(3) All or part of the Settlement should be determined to be "payment in compensation for loss of future earnings" and, hence, exempt pursuant to Ohio Revised Code ("O.R.C.") § 2329.66(A)(12)(d).

Each of these arguments will be addressed below.

### B. Property of the Estate

▇ Section 541(a)(1) of the Bankruptcy Code defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." In *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court proclaimed that § 541(a) must be read broadly in determining what constitutes property of the estate. The Supreme Court stated as follows:

---

**4.** In discrimination actions brought under Title VII of the Civil Rights Act of 1964, the plaintiff has no right to a jury trial. Consequently, if the

Employment Discrimination Action were to proceed, it would be tried to the District Court judge.

"Both the Congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate."

462 U.S. at 204, 103 S.Ct. at 213.

It is well-established that the broad scope of § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action. S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6323; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515; *Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556 (11th Cir.1985); *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.d 1222 (8th Cir.1987); *In re De Berry*, 59 B.R. 891 (Bankr.E.D.N.Y.1986); *In re Bell & Beckwith*, 50 B.R. 422 (Bankr. N.D.Ohio 1985). *See also*, 4 *Collier on Bankruptcy*, 91 541.10[1] at 541–63–64 (15th ed. 1986). Although the Court's research has revealed no reported decision which specifically holds that a debtor's Title VII employment discrimination action constitutes property of the bankruptcy estate, the Court can conceive of no logical reason why such actions should be excepted from the general rule providing that *all* causes of action which have accrued to the Debtor as of the filing of the petition are property of the estate. Indeed, other federally-created rights of action have been held to be properly includible within the bankruptcy. *See, e.g., Matter of Smith*, 640 F.2d 888 (7th Cir.1981) (holding that federal Truth–In–Lending claim constitutes property of the estate).

It is clear, then, that Carson's Employment Discrimination Action constitutes property of the estate and that the action may only be prosecuted by the Trustee on behalf of the estate. *Miller v. Shallow-*ford *Community Hosp., Inc.*, 767 F.2d at 1559; *In re Bell & Beckwith*, 64 B.R. 144 (Bankr.N.D.Ohio 1986). Nevertheless, Debtor argues that the portion of the Settlement which represents compensation for lost future wages, which the parties referred to as "front pay," is not property of the estate ("property-of-the-estate argument").

While Debtor's property of the estate argument is somewhat difficult to follow, Debtor appears to contend that the portion of the $99,000 lump-sum Settlement which is properly allocable to future lost wages, or front pay, is roughly equivalent to "earnings from services performed by ... [the] [D]ebtor after the commencement of the case," and, thus, is properly excludible from property of the estate pursuant to 11 U.S.C. § 541(a)(6). The Debtor has not directly alluded to § 541(a)(6) and seems repeatedly to confuse two alternative arguments: (1) that the Settlement is not property of the estate; and (2) the Settlement is property of the estate, but is subject to an exemption.[5] Nonetheless, the gist of Debtor's property-of-the-estate argument seems to be that all or part of the settlement falls within the "earnings exception" contained in § 541(a)(6) of the Code.[6]

The Court's review of the case law reveals no reported decision in which an argument similar to that asserted here by the Debtor has been raised. However, the general principles enunciated in the cases interpreting § 541 plainly do not support debtor's property-of-the-estate argument. As noted above, Congress intended to provide a very expansive definition of property of the estate. *Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d at 1559; *In re Weyland*, 63 B.R. 854 (Bankr. E.D.Wis.1986). In contrast, the earnings exclusion created by § 541(a)(6) was intended to be a very narrow and specific exception to the otherwise all-inclusive definition

---

**5.** The Debtor's contention that all or part of the Settlement is exempt pursuant to O.R.C. § 2329.66(A)(12)(d) will be discussed later in this decision.

**6.** Section 541(a)(6) includes as property of the estate "all proceeds, product, offspring, rents or profits of *from services performed by an individual debtor after commencement of the case.*" (Emphasis added).

of property of the estate contained in § 541(a). *In re Fitzsimmons*, 20 B.R. 237, 239 (9th Cir.BAP 1982). Thus, the bankruptcy courts which have been called upon to interpret the earnings exception of § 541(a)(6) have held that the decisive factor in determining whether sums of money received post-petition constitute property of the estate is whether such income accrues from post-petition services. *In re Palmer*, 57 B.R. 332 at 334 (Bankr.M. D.Va.1986); *In re Sloan*, 32 B.R. 607 (Bankr.E.D.N.Y.1983). *See also, In re Marshburn*, 5 B.R. 711, 713 (Bankr.D.Colo. 1980).

■ Application of the foregoing principles to the facts of the case *sub judice* compels the conclusion that the entire Settlement, including that portion attributable to lost future wages (if any), is properly included within the bankruptcy estate. Clearly, the sum received by Carson in settlement of the Employment Discrimination Action, or any portion thereof, is not attributable to the performance of actual post-petition services by the Debtor. Instead, even if Carson's self-serving characterization of the lump-sum award is accepted, one cannot escape the conclusion that the Settlement represents a compensation for loss of future earnings as opposed to payment for actual, post-petition services rendered. Because Debtor's receipt of the Settlement is not conditioned upon, or in any way connected with, the performance of continued services subsequent to the petition, the Court finds that the earnings exception of § 541(a)(6) is not applicable. To accept the interpretation of § 541(a)(6) urged by the Debtor would unduly broaden the narrow post-petition earnings exception to § 541(a)'s inclusive definition of property of the estate. Further, in every bankruptcy case in which the estate included a debtor's cause of action, the Court would be forced to make an apportionment of damages where lost wages are arguably a constituent part of the overall settlement.

The Court believes that its conclusion is further buttressed by Congress' enactment of 11 U.S.C. § 522(d)(11)(E), which exempts compensation for loss of future earnings, to the extent such compensation is reasonably necessary for the support of the debtor and any of his dependents. If compensation for loss of future income fell within the parameters of § 541(a)(6)'s post-petition earnings exception, then Congressional enactment of § 522(d)(11)(E) could reasonably be deemed to be a superfluous gesture. It is much more plausible to assume that Congress intended to include compensation for lost wages within the ambit of the bankruptcy estate, subject to later exclusion through the claim of an appropriate exemption. Accordingly, the Court holds that the entire Settlement, including that portion (if any) attributable to future lost wages, constitutes property of the estate.

## C. Approval of the Proposed Compromise

■ Having concluded that the entire Settlement constitutes property of the estate, the Court shall next consider the issue of whether the Settlement of the Employment Discrimination Action proposed by the Trustee should be approved. B.R. 9019(a) authorizes the Trustee to move the bankruptcy court to approve a proposed compromise. The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the Court. *See, e.g., Matter of Ericson*, 6 B.R. 1002 (D.C.Minn.1980); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr.D.Me.1983); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605 (Bankr.N.D.Ohio 1985); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363 (Bankr.D.R.I.1986). While the Court may consider the objection of a creditor, or other party-in-interest, to the proposed compromise, such an objection is not controlling and will not prevent approval by the Court. *See, e.g., In re General Store of Beverly Hills*, 11 B.R. 539 (9th Cir.BAP 1981); *In re Blue Coal Corp.*, 47 B.R. 758 (Bankr.M.D.Pa.1985); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. at 607.

■ The Court must determine whether the Settlement is in the "best interests of

the estate" before granting approval.[7] *In re Mobile Air Drilling Co., Inc.,* 53 B.R. at 607; *In re Hydronic Enterprise, Inc.,* 58 B.R. at 365; *In re Hallet,* 33 B.R. at 565; *In re Lakeland Development Corp.,* 48 B.R. 85, 89 (Bankr.D.Minn.1985); *In re Heissinger Resources, Ltd.,* 67 B.R. 378, 383 (C.D.Ill.1986). In determining whether a compromise is in the best interest of an estate, most bankruptcy courts consider the four criteria enunciated by the Eighth Circuit Court of Appeals in *Drexel v. Loomis,* 35 F.2d 800 (8th Cir.1929). The *Drexel* criteria include:

(1) The probability of success in the litigation;

(2) The difficulties, if any, to be encountered in the matter of collection;

(3) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(4) The paramount interest of creditors and proper deference to their reasonable views.

*Accord, Matter of Baldwin United Corp.,* 43 B.R. 888 (Bankr.S.D.Ohio 1984); *In re Mobile Air Drilling Co., Inc.,* 53 B.R. at 607; *In re Lakeland Development Corp.,* 48 B.R. at 89–90; *In re Hydronic Enterprise, Inc.,* 58 B.R. at 365; *In re Heissinger Resources, Ltd.,* 67 B.R. at 383; *Fogg v. Sherman Homes, Inc. (In re Sherman Homes, Inc.),* 28 B.R. 176, 178 (Bankr.D. Me.1983); *In re W.T. Grant Co.,* 10 B.R. 801, 804 (Bankr.S.D.N.Y.1981).

In passing upon the proposed Settlement, the Court must consider the principle that "law favors compromise." *In re Lakeland Development Corp.,* 48 B.R. at 90; *In re Heissinger Resources, Ltd.,* 67 B.R. at 383; *In re Sherman Homes, Inc.,* 28 B.R. at 177; *Port O' Call Investment Co. v. Blair (In re Blair),* 538 F.2d 849, 851 (9th Cir. 1976).

Finally, it is important to note that the bankruptcy courts' responsibility is not to decide the numerous questions of law and fact raised by parties, but rather to canvass the issues in order to determine whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom Benson v. Newman,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)); *In re Heissinger Resources, Ltd.,* 67 B.R. at 383; *In re Tampa Chain Co., Inc.,* 70 B.R. 25, 26 (S.D.N.Y.1987). The notion that a "mini-trial" is required on the merits of the claim sought to be compromised has been rejected. *In re Heissinger Resources, Ltd.,* 67 B.R. at 383; *In re Blair,* 538 F.2d 849 (9th Cir.1976) (per curiam). With the foregoing principles in mind, the Court will turn to the facts of the instant case.

### 1. Probability of Success

Although no testimony was offered on this issue, extensive arguments were made (both orally at hearing and by way of brief) by counsel regarding the likely outcome of the Employment Discrimination Action if it were to proceed to trial. Special Counsel has enumerated a number of factual and legal obstacles to a favorable judgment. Special Counsel submit that these obstacles make the odds of obtaining a favorable result at trial somewhat slim. The factual/legal pitfalls which Special Counsel have outlined include: the disruptive and disloyal conduct on the part of the Debtor; Debtor's failure to mitigate damages; the problematic nature of potential back pay/front pay recoveries; and the relative imbalance in the evidence which Special Counsel anticipates will be offered by the parties (two to four days of testimony and evidence would be presented by the Trustee, while AT & T will likely put on two to three weeks of testimony). Debtor's counsel vigorously disputes Special Counsel's assessment of the case, arguing that Carson was the victim of a classic retaliatory discharge and that there is, at least, a 50% chance of full recovery at trial. *See, In re Hydronic Enterprise, Inc.,* 58 B.R. at 365; *In re Hallet,* 33 B.R. at 565.

---

**7.** The Trustee, as proponent of the compromise, has the burden of persuading the Court that settlement is in the best interests of the estate.

Because the Court obviously possesses no independent knowledge of facts underlying the Employment Discrimination Action, and because the area of employment litigation is outside the scope of its expertise, the Court must rely heavily upon the representations of counsel in assessing the probability of the Trustee obtaining a favorable judgment. Based upon the totality of the facts and circumstances surrounding the Employment Discrimination Action as well as the substantive legal standards which would govern its ultimate resolution, the Court concludes that the probability of the Trustee obtaining a favorable verdict does not justify proceeding to a trial of the case.

In reaching the conclusion that the probability of success on the merits is low, the Court notes that it places much greater weight upon Special Counsel's assessment of the case than that offered by Debtor's counsel. Special Counsel possess a wealth of experience in the area of employment discrimination and is intimately acquainted with the Trustee's case. On the other hand, Debtor's counsel appears to have been retained at the eleventh hour for purposes of contesting the Trustee's Motion to Compromise. Moreover, Debtor's counsel concedes the fact that she is not an expert in this field of litigation. In sum, the Court finds that the relatively low probability of the Trustee obtaining a favorable verdict at trial is a factor militating strongly in favor of approval of the Settlement.

### 2. Difficulty in Collection

Because AT & T indicates that it is ready, willing and able to pay the $99,000 Settlement, collection does not appear to be a problem. Likewise, the Court presumes that, even if the Trustee were to enjoy a complete victory at trial, AT & T would possess the financial wherewithal to pay the entire amount of damages sought—*i.e.*, $280,000. The Court notes, however, that if the Trustee would receive a total victory at trial, the estate's collection of the award would be delayed due to the inevitable appeal. On balance, the Court does not believe that the second *Drexel* criteria weighs in favor of, or against, settlement of the Employment Discrimination Action.

### 3. Complexity, Expense, Inconvenience and Delay

There is no dispute that if the Employment Discrimination Action goes forward, the estate will be required to bear the burden of an expensive, protracted and complex legal proceeding. Indeed, it is conceivable that the legal fees and expenses attendant to the preparation and trial of the Employment Discrimination Action could virtually deplete the funds of the estate. Given the problematic nature of a possible recovery, it would certainly be unwise to "roll the dice" at trial in the hope of gaining a higher recovery, when acceptance of the proposed Settlement would enable the Trustee to pay administrative costs and all creditors in full. Hence, application of the third criteria in the four-prong *Drexel* test also strongly weighs in favor of approval of the Trustee's Motion to Compromise.

### 4. Views of Creditors

In this case, no objections to the proposed Settlement have been filed by any member of the creditor body. Indeed, inasmuch as approval of the proposed compromise will yield a 100% dividend to all holders of allowed general unsecured claims, the Court can conceive of no reason why the creditors would be adverse to the Court's approval of the Settlement. Further, while the debtor has opposed the Settlement,[8] it is well-settled that an objecting party-in-interest may not substitute his judgment for that of the Trustee. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 395–96 (Bankr.E.D.Pa.1987).

In sum, based upon its application of the four *Drexel* criteria, the Court concludes that approval of the compromise proposed

---

**8.** Some question exists as to whether the Debtor has standing as a party-in-interest to object to a compromise reached by a trustee in a Chapter 7 case. However, there is decisional authority supporting the proposition that, where, as here, there will be sufficient assets in the bankruptcy estate to create a surplus of assets to be returned to the debtor, the debtor does have standing to object to the trustee's proposed compromise. *See, In re Mobile Air Drilling Co., Inc.*, 53 B.R. at 608–09. *Cf., Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706–07 (8th Cir.1979).

by the Trustee is in the best interests of the estate. The Court believes that Debtor's objection to the Settlement is motivated only by self-interest and fails to take into account the best interests of the estate.[9] If the Settlement is approved, all claims will be paid in full and a surplus of approximately $25,000 will remain for distribution to the Debtor. If the Settlement were rejected and the case proceeds to trial, litigation costs would substantially deplete the estate. At bottom, the Court simply cannot conclude that the slight possibility of obtaining a somewhat higher recovery if the Employment Discrimination Action proceeds to judgment justifies the risk and expense to the estate which will necessarily attend a trial on the merits in District Court. Accordingly, the Court finds that the Settlement is in the best interests of the estate and, therefore, will be approved.

## D. The Debtor's Exemption Claim

Debtor contends that, even if the Settlement is approved, he is entitled to retain all, or a large portion of the proceeds thereof, given the fact that the Settlement allegedly falls within the exemption created by O.R.C. § 2329.66(A)(12)(d). O.R.C. § 2329.66(A)(12)(d) states:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order as follows:

*   *   *   *   *   *

(12) The person's right to receive, or moneys received during the preceding

twelve calendar months from any of the following:

*   *   *   *   *   *

(d) A payment in compensation for loss of future earnings of the person or an individual of whom the person is or was a dependent, to the extent reasonably necessary for the support of the debtor and any of his dependents.

The Court notes that there is neither Ohio legislative history nor Ohio case law which interprets the "future earnings" exemption created by O.R.C. § 2329.66(A)(12)(d). Hence, because Ohio has adopted virtually the exact language of the federal exemption set forth in 11 U.S.C. § 522(d)(11)(E), it is appropriate to consult both the legislative history of that provision and the decisional law interpreting it in order to resolve the issue of whether Debtor may properly claim this future earnings exemption. *In re Phillips*, 45 B.R. 529 (Bankr.N.D.Ohio 1984).

The intent of the drafters of 11 U.S.C. § 522(d)(10)(E) is presented in the House Report, which states:

Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support, or separate maintenance (but only to the extent reasonably necessary for the support of the debtor and any dependents of the debtor), and benefits under a certain stock bonus, pension, profitsharing, annuity or similar plan based on illness, disability, death, age or length of service. Para-

---

**9.** At hearing, counsel for the Debtor conceded that, if the entire $99,000 were to be distributed to Carson, he would not object to the Motion to Compromise. It seems clear then, that Debtor's fundamental objection to the proposed compromise stems not from the amount of the Settlement, but instead, from the fact that, after costs of administration and all creditors are paid, he will receive a mere $25,000. Thus, it appears that Debtor's argument is not that the Settlement is not in the best interests of the estate, but instead, that the Settlement is not in the best interests of the Debtor. The motivation underlying Debtor's objection to the Motion to Compromise is further illuminated by Debtor's con-

tention that the Court should, in the interests of effectuating Debtor's fresh start, permit the Debtor to retain a larger portion of the Settlement by reducing or eliminating the distribution to unsecured creditors. The patent frivolity of this argument is readily apparent. Indeed, the assertion of this argument dangerously approaches a violation of B.R. 9011. Section 726(a) of the Bankruptcy Code fixes the order of distribution of property of the estate. The Court has neither the power, nor if it possessed the power, the inclination, to alter the scheme of distribution established by Congress so that the Debtor may obtain a "better fresh start."

graph (11) allows the debtor to exempt certain compensation for losses. These include crime victim's reparation benefits, wrongful death benefits (with a reasonably necessary for support limitation), life insurance proceeds (same limitation), compensation for bodily injury, not including pain and suffering ($10,000 limitation), and loss of future earnings payments (support limitation). This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings. Those items are handled separately by the bill. H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 6318.

The Trustee argues that the future earnings exemption is intended to cover only losses of future earnings arising from actual bodily injury to the debtor. Several bankruptcy court decisions have interpreted the future earnings exemption in this manner. *See, In re Phillips*, 45 B.R. at 531; *In re Simon*, 71 B.R. 65, 67 (Bankr.N. D.Ohio 1987). These courts find support for this interpretation of the future earnings exemption from the following language of the House Report which was quoted above:

> "This provision in subparagraph (D)(11) is designed to cover payments in compensation of *actual bodily injury,* such as loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings." (Emphasis added).

Based upon its careful research of this question, the Court is inclined to disagree with the interpretation of the future earnings exemption urged by the Trustee and followed by the *Phillips* and *Simon* courts. First, the Trustee's reading of the future earnings exemption ignores the plain wording of the statute. On their face, neither O.R.C. § 2329.66 nor 11 U.S.C. § 522(d)(11)(E) restrict the scope of the exemption to lost future earnings resulting from *bodily injury.* Second, the Court believes that the language of the House Report, upon which the *Phillips* and *Simon* courts' interpretation is premised, is not meant to modify the future earnings exemption of § 522(d)(11)(E). A more logical reading of the House Report would indicate that the foregoing language of the report refers to § 522(d)(11)(D) of the Code (which exempts certain payments on account of bodily injury) as opposed to the future earnings exemption set forth in § 522(d)(11)(E). Finally, as a matter of policy, the Court believes that the interpretation of the earnings exemption advocated by the Trustee is unduly restrictive. The Court can conceive of no societal interest which would be served by permitting a debtor to exempt compensation for lost future earnings caused by bodily injury but denying the benefit of the exemption to other debtors whose loss of earnings results from a wrongful act that does not inflict actual harm to their person (*e.g.,* retaliatory discharge, breach of contract, etc.). *See, In re Forbes*, 58 B.R. 706 (Bankr.S.D.Fla.1986) (holding that a wrongfully discharged debtor could have exempted portion of a settlement representing recovery of wages pursuant to § 522(d)(11)(E) had he not concealed the cause of action in violation of 11 U.S.C. § 522(g)(1)(B)). The Court, therefore, holds that O.R.C. § 2329.66(A)(12)(d) does operate to exempt that portion of the Settlement, if any, which is attributable to compensation for the Debtor's lost future wages.[10]

**10.** The Court is unable to agree with Special Counsel's contention that Sixth Circuit case law, and specifically, *Davis v. Combustion Engineering,* 742 F.2d 916 (6th Cir.1984), would preclude an award of front pay to the Debtor in the Employment Discrimination Action. The *Davis* court merely held that front pay "does not lend itself to a *per se* rule.... [I]t must be governed by the sound discretion of the trial court and may not be appropriate in all cases." *Id.* at 922–23. The Sixth Circuit has specifically held that front pay awards should be made where such an award will aid in ending illegal discrimination and rectifying the harm it causes. *Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir.1985). The *Shore* court also delineated

■ The difficulty facing the Court in applying the lost earnings exemption in the present case is that the Settlement is in lump-sum form. Several bankruptcy courts, confronted with similar factual situations, have undertaken the task of apportioning a lump-sum payment (either a lump-sum settlement or an award based upon a general jury verdict) between various exempt and non-exempt categories of damages. *See, e.g., In re Haga,* 48 B.R. 492 (Bankr.E.D.Tenn.1985) (allocating a portion of general jury award to compensation for actual bodily injury and loss of future wages, both of which were exempt under both Tennessee and federal law); *In re Territo,* 36 B.R. 667, 670–71 (Bankr.E.D.N.Y.1984) (although settlement failed to specify an allocation between personal injury, property damage, pain and suffering, or lost earnings, the Court concluded that "most, if not all of the . . . settlement could be reasonably attributed to lost earnings, and could be retained as exempt property").

While the above cases support the Court's authority to apportion a lump-sum settlement between various exempt and non-exempt categories of damages, the Court declines to do so in the case at bar. In the present case, not a scintilla of evidence was offered to assist the Court in making an allocation of the Settlement. Hence, on the state of the record before it, the Court is unable to conclude that a rational basis exists upon which to make an informed apportionment of the Settlement.

Normally, this failure of proof with respect to the issue of what portion of the Settlement should properly be allocable to compensation for future lost wages would redound to the detriment of the Trustee. B.R. 4003(c)[11] places the burden of proof on the party objecting to the claim of exemption. Because the Trustee failed to adduce evidence to contradict the Debtor's characterization of the Settlement as compensation for loss of future earnings, it may be argued that the Debtor's characterization of the entire Settlement as future lost earnings must be accepted by the Court. *See, e.g., In re Miller,* 36 B.R. 420 (Bankr.D.N.M.1984); *Matter of Harris,* 50 B.R. 157 (Bankr.E.D.Wis.1985). However, the Court declines to reach this result given the procedural background in which this exemption issue arose in the case at bar.

The Court's review of the Schedule B–4 filed by the Debtor reflects that the Debtor did not claim an exemption in compensation for loss of future earnings under O.R.C. § 2329.66(A)(12)(d). The claim of exemption was made for the first time at the hearing on the Trustee's Motion to Compromise. However, this delay is not fatal to the Debtor's exemption claim. B.R. 4003(a) provides that a debtor must file a list of all property claimed exempt on the schedule of assets required to be filed by B.R. 1007. B.R. 1007 requires that the schedule of assets be filed with the petition in a voluntary case, or if the petition is accompanied by a list of all the debtor's creditors, within 15 days thereafter. Nevertheless, the Sixth Circuit has adopted a somewhat permissive approach with respect to amendment of the debtor's list of exemptions. In *Lucius v. McLemore (In re Lucius),* 741 F.2d 125 (6th Cir.1984), the Court held that B.R. 1009 affords a debtor the right to amend his list of exemptions as a matter of course at any time before the close of a bankruptcy case. The only qualification which the court placed upon this right of amendment was that a bankruptcy court may refuse to permit a debtor to amend his

the factors which district courts have utilized in determining whether an award of front pay is appropriate. *Id.* at 1159–60. Moreover, it appears that the Sixth Circuit and other federal courts have recognized that an award of front pay is particularly appropriate, where, as in the Debtor's case, the hostility existing between the parties precludes reinstatement as a realistic possibility *Shore v. Federal Express Corp.,* 777 F.2d at 1159; *EEOC v. Kallir, Phillips, Ross, Inc.,* 420 F.Supp. 919 (S.D.N.Y.1976), *aff'd.,* 559 F.2d 1203 (2d Cir.1977), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1978).

11. B.R. 4003(c) provides as follows:

(c) **Burden of Proof.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

list of exemptions where the debtor has acted in bad faith or has concealed property.

Thus, under the rule enunciated in *Lucius*, the Debtor clearly would be entitled to amend his Schedule B–4 to claim an exemption in that portion of the Settlement which constitutes compensation for loss of future earnings. However, basic fairness requires that the Trustee be afforded a meaningful opportunity to interpose an objection to this claim of exemption. Obviously, the Trustee was not placed on notice that this matter would be contested at the hearing on the Motion to Compromise, at which time the exemption claim was first made. Accordingly, in order to grant the Trustee a reasonable opportunity to litigate Debtor's exemption claim, and to expedite the administration of this case, the Court ORDERS that the Debtor shall be granted seven (7) days from the entry of this order to amend his Schedule B–4 to claim the exemption provided by O.R.C. § 2329.66(A)(12)(d). The Debtor's claim of exemption shall specify whether Debtor claims that the entire Settlement, or a portion thereof, is exempt as compensation for loss of future earnings. The Trustee will then be afforded an opportunity to object to Debtor's exemption claim pursuant to B.R. 4003(b). Assuming an amended exemption is claimed and a timely objection thereto is interposed by the Trustee, the Court will schedule this matter for an evidentiary hearing to determine what, if any, part of the Settlement should be allocated to compensation for loss of future earnings (front pay), and hence, subject to exemption under O.R.C. § 2329.66(A)(12)(d).

The Court withholds its ruling upon Special Counsel's Application for Allowance of Fees and Costs pending resolution of Debtor's Claim of Exemption.

IT IS SO ORDERED.