## In re ADIRONDACK RAILWAY CORPORATION, Debtor.

Victor T. EHRE, Sr., Trustee in Reorganization for the Estate of Adirondack Railway Corporation, Plaintiff,

v.

PEOPLE OF THE STATE OF NEW YORK by William C. HENNESSY, as Commissioner of the New York State Department of Transportation, Defendant.

Bankruptcy No. 81–00456.
Adv. No. 82–0283.

United States Bankruptcy Court,
N.D. New York.

Oct. 14, 1988.

Hancock & Estabrook, Syracuse, for plaintiff; Richard W. Cook, Thomas C. Buckel, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, for defendant; Edward M. Scher, Asst. Atty. Gen., of counsel.

Joseph C. Davidson, Jr., Albany, for N.Y.S. Dept. of Transp.

Menter, Rudin & Trivelpiece, P.C., Syracuse, for Chase Lincoln Bank; Kevin R. Newman, of counsel.

Rossi, Kehoe, Murnane & Hughes, Utica, for Chester Jajo; Thomas P. Hughes, of counsel.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Victor T. Ehre, Sr., the Trustee in Reorganization for the Estate of Adirondack Railway Corporation ("Debtor"), Plaintiff, has moved this Court for an order, pursuant to Bankruptcy Rule ("Bankr.R.") 9019(a), approving the Application for Stipulation of Settlement and Agreement for Sale, Assignment or Rejection of Lease and authorizing the Trustee to execute all documents on behalf of the Estate. The entry of this order would settle the damages litigation of an adversary proceeding commenced on or about October 7, 1982 against the State of New York and deemed "related to" the Debtor's bankruptcy case. Upon bifurcation, the defendant was found liable. Familiarity with the Court's three prior decisions concerning said adversary proceeding is assumed, obviating the necessity of recounting the procedural history and background facts.

A hearing on the Trustee's motion was held before the Court on September 19, 1988. At that time the Trustee, by his attorneys, Hancock & Estabrook, Esqs., Richard W. Cook, Esq. and Thomas C. Buckel, Esq., of counsel, appeared in support thereof. Although other persons and parties in interest appeared at the hearing, there was no opposition to the actual settlement of the adversary proceeding.

Pursuant to the terms of the Stipulation of Settlement, the State of New York, acting through its Commissioner of the Department of Transportation, has agreed to

pay the Trustee the sum of $200,000.00 regardless of the existence of any liens or judgments filed against the State on account of the Debtor. The State has also assented to offer the sum of $25,000.00, subject to higher bids, in consideration of the Debtor either rejecting or assigning its lease rights in a railroad line running from Remsen, New York to Lake Placid, New York. Additionally, the Stipulation provides for a limited set of mutual releases between both parties.

This is the second time in little more than a year that the parties to the adversary proceeding have sought to settle. On November 25, 1987, the Court entered an Order rejecting a proposed settlement of this same adversary proceeding, primarily because it concluded that the parties had not actually reached a binding agreement since too many contingencies existed, what benefit might ultimately be derived by creditors was unclear, and, in all probability, the proposed settlement would have spawned even more litigation with respect to its implementation.

The instant Stipulation of Settlement was fully executed by both the Trustee and the State on August 4,. 1988, and requires only that it be approved by the Court in order to bind both parties. It is clearly not an agreement to agree in the future as was its predecessor. Further, it offers an opportunity for the public interest to be served by allowing the Debtor to offer its lease rights for sale at public auction and thus complies with § 1165 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp. 1988) ("Code").

In his moving papers, the Trustee addresses the so-called four part test of *Drexel v. Loomis,* 35 F.2d 800 (8th Cir.1929), which has evolved into the standard used by most bankruptcy courts in ruling on a settlement under Bankr.R. 9019(a). *See In re Carson,* 82 B.R. 847, 852–855 (Bankr.S. D.Ohio 1987); *In re Bell & Beckwith,* 77 B.R. 606, 611–615 (Bankr.N.D.Ohio 1987); *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 390, 395–396, 402–403 (Bankr.E.D.Pa.1987). *See also Blond v. Balaber–Strauss (In re Tampa Chain Co.,*

*Inc.),* 70 B.R. 25, 26 (S.D.N.Y.1987). Accordingly, the Trustee's papers forecast the probability of success, the inconvenience and the delay in the pending litigation, the possible difficulties of collection and the interest of creditors and deference to their reasonable views.

The Trustee concedes that his claim is particularly vulnerable on two specific grounds. Initially, he points to a substantial error in damage calculation made and admitted by his expert witness, which reduced the Debtor's potential claim, at best, to $326,000.00. Secondarily, he references the State's assertion of a defense of sovereign immunity, which although previously rejected by this Court, would certainly be raised, perhaps successfully, on appeal.

The Trustee also admits that a potential ten to fifteen per cent dividend to unsecured creditors hinges upon the success or failure of a pending adversary proceeding by Chester Jajo, who seeks to enforce a mechanics lien of some $80,000.00 plus against the settlement funds, as well as a pending personal injury action (Praga) which arose after the Trustee permitted Debtor's liability insurance coverage to lapse. Should both the mechanics lien and the personal injury claim succeed against the Debtor, it is possible, if not probable, that there may be little or nothing for unsecured creditors.

Nevertheless, the existence of these two potentially devastating claims cannot alter the value of the pending litigation which is worth only what it is worth—no more, no less. The Court believes that to continue the remaining damages litigation is not in the best interest of any of the Debtor's creditors since it would drive up already formidable administrative priority claims and further deplete the property of the estate. Moreover, the Court notes that no creditor has objected to the settlement and, in fact, the largest unsecured creditor, Chase Lincoln Bank, vigorously enunciated its support at the hearing on September 19, 1988.

With regard to that portion of the settlement which offers the Debtor's lease rights for sale to the highest bidder, with an

initial bid of $25,000.00 being submitted by the State, the Court believes that this satisfies its own statutory duty and that of the Trustee to consider the public interest. Code § 1165. This finding is further supported by the Court's Order of November 25, 1987, which specifically found that the Debtor's "cashlessness" rendered Code §§ 1169 and 1170 inapplicable, relying upon *In re Auto Train Corp.*, 11 B.R. 418, 421–425 (Bankr.D.C.1981). The Court also notes the de facto liquidation of the Debtor that has been going on almost since the filing more than seven years ago, amounting to a complete and permanent cessation of all its train operations. *See In re Auto Train Corp, supra,* 11 B.R. at 422–423; Code § 1174. In effect, the instant settlement makes official the Debtor's conversion, *nunc pro tunc,* within the boundaries of Subchapter IV in Chapter 11, e.g. the termination of operations and the collection and reduction to money all of the property of the estate as if the Debtor were in Chapter 7. *See id.;* Code § 109(b)(1). Under this analysis, therefore, the State is under no obligation, nor can it even comply if one existed, to operate the Debtor's railroad.

Sale of the lease rights at public auction, properly noticed, will afford any individual or group the opportunity to acquire the lease of the rail line or, in the alternative, should the State be the successful bidder, infuse at a minimum an additional $25,-000.00 into the estate. Although not addressed in the settlement document, the Court also assumes the State's ability to comply with § 18 of the New York State Transportation Law (McKinney Supp.1988) insofar as it might apply to the transfer of the lease rights.

The Court thus determines that the Stipulation of Settlement entered into on August 4, 1988 is both fair and reasonable and in the best interests of the estate, in light of the four factors of *Drexel v. Loomis, supra,* 35 F.2d at 800, as well as the Court's responsibility to the public. "The law favors compromise ...". *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986) (citation omitted).

The Court is able to finally determine the settlement of this related proceeding upon the District Court's individual reference by virtue of an Order of that Court dated October 11, 1988, pursuant to 28 U.S.C.A. § 157(c)(2) (West Supp.1988).

IT IS HEREBY ORDERED.