**In re Edward ALVES, Debtor.**

**Bankruptcy No. 8300539.**

United States Bankruptcy Court,
D. Rhode Island.

Aug. 29, 1985.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R.I., Trustee.

Leonard A. Kamaras, Providence, R.I., for Robert & Joan Reilly.

Jean E. Connelly, Pearlman & Vogel, Providence, R.I., for debtor.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

After hearing on the trustee's Notice of Intended Sale, and objections thereto by

Robert and Jane Riley, an order was entered on May 21, 1985 authorizing the sale of the debtor's real estate on Riverside Drive, South Kingstown, Rhode Island to Beverly and Harold Nonnenmacher for $39,200. Because our May 21 order has been appealed by the Rileys to the District Court for the District of Rhode Island, we submit the following summary, together with our findings of fact and conclusions of law, pursuant to Bankruptcy Rules 7052 and 9014.

This dispute begins about three years ago, when the Rileys were shown the subject property by a real estate broker, Joan Carter, to whom they submitted an offer of $45,000. That offer was rejected by Alves because of a dispute over the broker's fee. Sometime after he rejected the Rileys' offer, Alves cut down a number of trees on the property, leaving stumps, which the Rileys contend reduces the value of the property. On February 18, 1983, the Rileys brought suit against the debtor in Providence County Superior Court, C.A. No. 83–1066, to compel the sale at the reduced price of $35,000 (on account of Alves' tree cutting spree). That action was stayed by the filing of the bankruptcy on July 26, 1983. The Rileys were willing to pay $35,000 for the property at the commencement of the May 9, 1985 hearing in this Court. With this background, our findings of facts and conclusions of law are as follows:

1. The subject real estate consists of a one-half acre, unimproved lot that fronts on a tidal river.

2. On March 19, 1984, the debtor entered into an agreement with real estate broker, Carol Lavin, who listed the property for sale at $53,000.

3. Lavin advertised the property for approximately one year in the *Providence Journal* and placed signs on or near the property.

4. Between March 1984 and February 1985 the property was shown by Lavin approximately 35 times. Several interested parties thought the asking price was too high. Others were concerned with possible pollutants in the river fronting the property, or with the need to obtain a variance from the Town of South Kingstown in order to install a septic system.

5. Lavin received three offers (prior to the Nonnenmachers'), all in the low to mid thirty thousand dollar range. Each of these offers was rejected.

6. On February 4, 1985, the Nonnenmachers offered to purchase the property for $38,000, the highest offer received by Lavin. It was this offer which was proposed in the trustee's Notice of Intended Sale, and about which the May 9 hearing was held.

7. Lavin's marketing efforts were clearly sufficient to provide adequate exposure of the property. *See In re Nepsco, Inc.,* 36 B.R. 25 (Bankr.D.Me.1983).

8. We accept the opinion of real estate appraiser Peter Hurley, who testified that $38,000 was the market value of the subject property, based on sales of comparable properties on Riverside Drive located adjacent or close to the lot in question. Joan Carter's testimony placing the property's value at $45,000, is rejected. Her comparables were all located on the other side of the river, in areas more desirable than the subject property, and provided little support for her opinion of the value of the subject property.

9. At the conclusion of the appraisal testimony, counsel for the Rileys requested a chambers conference, with the suggestion that the matter could probably be resolved.

10. In the presence of counsel for the interested parties, Rileys' attorney offered one dollar more than the $38,000 bid submitted by the Nonnenmachers.

11. The Court (in agreement with the trustee) rejected the Rileys' offer of $38,001, viewing the one dollar increase as insignificant, and a waste of everybody's time. The Rileys' insistence that the Court was required to order the trustee to accept "the highest" offer, i.e. his, has even less merit than the $1.00 increase. *See In re Chung King,* 753 F.2d 547, 12 B.C.D. 937, 939 (7th Cir.1985) (no abuse of judicial dis-

cretion unless original confirmed sale price is "grossly inadequate").

12. Thereafter, the trustee recommended that it would be in the best interest of the estate to conduct an auction, and invited the Rileys, the Nonnenmachers, and anyone else interested in the property to participate. *See* 11 U.S.C. § 363 and Bankruptcy Rules 6004(e) and 2002(c)(1); *see also Berg v. Scanlon (In re Alisa Partnership)*, 15 B.R. 802 (Bankr.D.Del.1981) (the manner of sale is within the discretion of the trustee); H.R.Rep. 595, 95th Cong., 1st Sess. 4 (1977).

13. An auction was immediately held in the courtroom (without the presence of the judge), the Rileys and the Nonnenmachers bidding against each other in one hundred dollar increments, starting with the $38,000 offer made by the Nonnenmachers:

MR. KAMARAS: I am bidding for Mr. Riley. Thirty-eight one.

MR. NONNENMACHER: Two.

MR. KAMARAS: Three.

MR. NONNENMACHER: Four.

MR. KAMARAS: Five.

MR. NONNENMACHER: Six.

MR. KAMARAS: Seven.

MR. NONNENMACHER: Eight.

MR. KAMARAS: Nine.

MR. NONNENMACHER: Thirty-nine.

MR. KAMARAS: Thirty-nine one.

MR. NONNENMACHER: Two.

MR. KAMARAS: That's all.

MR. RICHARDSON: Thirty-nine two.

MR. KAMARAS: You heard me, didn't you?

(REPORTER'S NOTE: AUCTION COMMENCED AT 1:23 P.M. AND WAS COMPLETED AT 1:24 P.M.)

TR. at 72–73.

The hearing was then reconvened, and on the trustee's recommendation, the Court authorized the sale to the Nonnenmachers for $39,200.

■ It is within the discretion of the bankruptcy judge whether to approve a trustee's proposed sale of property of the estate. *See Nigro v. Estate of Chung King, Inc.*, 35 B.R. 420 (N.D.Ill.1983); *In re Fehl*, 19 B.R. 310 (Bankr.N.D.Cal.1982).

Underlying this determination are factors concerning the integrity of the trustee's sale and the preservation of and the best interest of the estate. *See In re Fehl, supra* at 311–312. At the May 9 hearing in this proceeding, all parties objecting to the trustee's Notice of Intended Sale were in attendance. That the property was given adequate marketing exposure was uncontroverted, and the evidence supports the conclusion that the $38,000 originally offered by the Nonnenmachers was fair and reasonable. When the Rileys indicated an intention to improve upon the Nonnenmachers' offer, the trustee acted prudently and in the best interest of the estate by conducting an auction. *See In re Muscongus Bay Co.*, 597 F.2d 11 (1st Cir.1979) (bankruptcy court refused to confirm bid upon learning that a higher bid was later received). The Rileys participated fully at the hearing, and at the auction, but they were not the successful bidders. The highest offer came from the Nonnenmachers at $39,200 and we concluded that the trustee's actions were completely appropriate, that approval of the Nonnenmacher offer was in the best interest of the estate, and that the sale to the Nonnenmachers for $39,200 should be confirmed.