**In re PLANNED SYSTEMS, INC., Debtor.**

**Bankruptcy No. 2–87–02576.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 25, 1988.

A.C. Strip, Myron N. Terlecky, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, Ohio, for Planned Systems, Inc.

Thomas C. Scott, Charles B. Mills, Jr., Thompson, Hine & Flory, Columbus, Ohio, for Katz Management Group.

Kenneth C. Johnson, Bricker & Eckler, Columbus, Ohio, for Charles D. Megla.

Robert N. Shamansky, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for Samuel C. Shamansky and Robert N. Shamansky.

## ORDER ON APPLICATION TO COMPROMISE CLAIM AND TO SELL PROPERTY

R. GUY COLE, Jr., Bankruptcy Judge.

This matter is before the Court upon the Application to Compromise Claim and To Sell Real Property ("Application") filed by Planned Systems, Inc., the debtor-in-possession in this Chapter 11 case, and the objection thereto filed by Charles D. Megla ("Megla"). The debtor-in-possession's Application was heard on February 8, 1988, following which the Court took this matter under advisement. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(A) and (N). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

At the outset, the Court notes that no testimonial or documentary evidence was offered by the parties at hearing. Instead, the facts relevant to the debtor-in-possession's Application were merely set forth in the arguments of counsel. Based upon the representations of counsel, it appears that the facts in this case are essentially undisputed.

On June 11, 1986, Planned Systems, Inc. ("PSI"), a corporation engaged in the commercial lawn care and landscaping business, filed a petition for relief under Chapter 11 of the Bankruptcy Code. Katz Management Group, Inc. ("KMG"), was listed in the debtor's Schedules of Assets and Liabilities (Official Form No. 6) as the

holder of both a secured and an unsecured claim against PSI. KMG's claims arose from the sale of the assets of its subsidiary, Lawn Group, Inc., including all of the lawn care equipment which was subsequently utilized by PSI in its business, in March of 1986 ("Asset Sale Transaction").

On September 18, 1987, PSI filed an adversary proceeding in this Court against KMG seeking to avoid the security interest which KMG obtained in the Asset Sale Transaction. PSI also seeks recovery of $154,603.30 in the adversary proceeding. Pursuant to the Asset Sale Transaction, certain real property and buildings located at 7343 Worthington–Galena Road, Columbus, Ohio (the "Property") were transferred to Barbara Miller. This transfer occurred on March 17, 1987. As a result of the Asset Sale Transaction, KMG also claims an equitable mortgage on the Property.

PSI seeks court approval of a proposed compromise of the respective claims of PSI and KMG which have been asserted in the adversary proceeding. The terms of the settlement are as follows:

1. All equipment which is being used by PSI in which KMG has a security interest shall be abandoned to KMG;

2. PSI will bring current the payments owed, if any, to General Motors Acceptance Corporation ("GMAC") and/or Bank One for equipment which was leased from those entities by KMG and which leases were assumed by PSI;

3. PSI shall dismiss the aforementioned adversary proceeding, being captioned *Planned Systems, Inc. v. The Katz Management Group, Inc.* bearing Case No. 2–87–0268;

4. Any funds owed by KMG to PSI for services performed shall be deemed to be satisfied;

5. The Property shall be sold and the proceeds disbursed as follows:

(a) The real estate broker's commission of 6% shall be paid in full;

(b) The land contract vendor's claim will be paid in full;

(c) The costs and expenses of sale shall be paid; and,

(d) The remaining proceeds will be divided equally between PSI and KMG.

As noted above, sale of the Property is an integral part of the proposed compromise. The Property has been listed for sale since August 8, 1987, with G.W. Banning Associates, Inc. ("Banning") acting as the listing real estate broker. During the period in which the Property has been solicited, a series of offers to purchase the Property have been tendered to PSI. These offers have been made by two offerors—(1) Megla; and, (2) Samuel C. Shamansky and Robert N. Shamansky (hereinafter jointly referred to as "Shamansky"). Initially, Megla offered $150,000 to purchase the Property. This offer and a subsequent $175,000 offer by Shamansky were rejected by PSI. On October 7, 1987, PSI accepted a $200,000 offer on the Property made by Shamansky. Thereafter, on October 19, 1987, Megla submitted an offer to purchase the Property for $204,000. At the hearing of this matter it was represented by counsel for Megla that Megla would amend his offer to purchase the Property by increasing the purchase price to $210,000.

The Court notes that PSI is seeking two distinct forms of relief in its Application. First, PSI seeks this Court's approval of a proposed compromise by and between PSI and KMG. Second, PSI requests this Court's approval of the proposed sale of the Property to Shamansky for $200,000. Each of these matters is addressed by the Court below.

■ B.R. 9019(a) authorizes the debtor-in-possession to request by motion the Bankruptcy Court's approval of a proposed compromise. Whether a compromise should be accepted or rejected lies within the sound discretion of the Court. *See, In re Carson,* 82 B.R. 847, 852 (Bankr.S.D. Ohio 1987); *Matter of Ericson,* 6 B.R. 1002 (D.C.Minn.); *In re Mobile Air Drilling Co., Inc.,* 53 B.R. 605 (Bankr.N.D.Ohio 1985); *In re Hydronic Enterprise, Inc.,* 58 B.R. 363 (Bankr.D.R.I.1986). Essentially, the Court must determine whether the

proposed compromise is in the "best interest of the estate" before granting approval. *In re Carson, supra* at 852–53; *In re Mobile Air Drilling Co., Inc.,* 53 B.R. at 607; *In re Hydronic Enterprise, Inc.,* 58 B.R. at 365.[1] Based upon the record made at hearing, as well as the lack of objection to the proposed compromise by any party-in-interest, the Court hereby finds that the proposed compromise (with the modifications in the sale procedure outlined below) is in the best interest of the estate and, therefore, shall be approved.

PSI also requests that this Court approve its proposed sale of the Property to Shamansky at a price of $200,000. As noted above, Megla has objected to approval of the sale of the Property on the ground that approval of the Shamansky offer would not be in the best interest of the bankruptcy estate. Instead, Megla argues that the Court should order sale of the Property to Megla at a price of $210,000. Megla submits that if the sale to Shamansky were approved, the bankruptcy estate would net $10,000 less than it would receive if the Property were ordered to be sold to Megla at a price of $210,000. In response, Shamansky contends that Megla has no standing to object to the proposed sale to Shamansky. Accordingly, Shamansky asks the Court to approve the sale of the Property to him at a $200,000 sale price.

■ The Court's research has revealed very few cases which have addressed the issue of whether a frustrated bidder has standing to object to a debtor-in-possession's motion to sell property pursuant to 11 U.S.C. § 363(b). The cases which have considered this matter have held that normally a frustrated bidder lacks standing to object to a sale of property. *See, In re Nepsco, Inc.,* 36 B.R. 25 (Bankr. D.Me. 1983); *Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272 (N.D.Ga. 1985). The *Nepsco* court analyzed this issue as follows:

The statutes and rules governing sale by trustees appear to be designed to protect the estate, not potential purchasers. Title 11 U.S.C. § 363(b) provides that the trustee may sell property of the estate, other than in the ordinary course of business, "after notice and a hearing." Bankruptcy Rule 6004(a) requires notice be given to the debtor, trustee and all creditors, in order that they may object to the proposed sale. Unlike former Bankruptcy Rule 606(b)(2), which required that sales be by public auction unless otherwise ordered by the Court, current Bankruptcy Rule 6004(e)(1) provides that *all* sales not in the ordinary course of business may be private or by public auction. If the sale is private, all creditors receive notice of the terms and conditions of the sale and the time fixed for filing objections. Bankruptcy Rules 6004(a); 2002(c)(1). If no objections are filed, the trustee may proceed with the sale without either a hearing or a court order.... Clearly, the thrust of this statutory scheme is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.,* the creditors of the estate. This scheme also promotes Congress' intent of keeping bankruptcy judges out of the administrative aspect of bankruptcy cases, since the Court no longer supervises sales as it did under the repealed Bankruptcy Act.... The Court finds nothing to indicate that prospective purchasers are within the zone of interests intended to be protected through this statutory scheme. The purposes of these statutes would be hindered, not furthered, by permitting a stranger to the estate to object to a sale to which no party in interest objected.

36 B.R. at 26–27 (citations and footnotes omitted).

This Court concurs with the holding of the *Nepsco* and *Big Shanty Land Corp.* courts. However, resolution of the standing issue is not vital to the Court's decision

---

**1.** This Court has recently rendered a decision which discusses in detail the factors which a bankruptcy court should consider in determining whether to approve a proposed compromise

pursuant to B.R. 9019(a). *See, In re Carson,* 82 B.R. 847, 852–55 (Bankr.S.D.Ohio 1987).

with respect to PSI's § 363(b) motion. In determining whether or not to approve the sale of the Property to Shamansky, the Court must determine whether such sale is in the best interest of the estate. *See, In re Nepsco, Inc.*, 36 B.R. at 26–27; *In re Alves*, 52 B.R. 353, 355 (Bankr. D.R.I. 1985).[2] Accordingly, even assuming that Megla lacks standing to object to PSI's § 363(b) motion to sell the Property to Shamansky, this does not preclude the Court from considering Megla's $210,000 offer in ascertaining whether the sale to Shamansky is in the best interest of the estate. Put differently, the mere fact that Megla lacks standing to object to the sale to Shamansky does not prevent the Court from considering Megla's offer (as Shamansky contends) in determining whether PSI's motion should be approved.

■ In attempting to determine whether to approve PSI's § 363(b) motion, the Court notes that it's analysis is limited by the meager record made at hearing. As was described above, no evidence whatsoever was adduced at the hearing upon this motion. Instead, the relevant facts surrounding the motion were presented in argument form by counsel for the respective parties. It is axiomatic that the statements of counsel are not evidence. Normally, under such circumstances, the Court would simply deny PSI's motion due to lack of evidentiary support. However, given the desire voiced by all parties to conclude the sale of the Property on an expedited basis, the Court will attempt to address the underlying issue on the basis of the limited record and the representations made by counsel.

■ Here, PSI intends to dispose of the Property by way of a private sale. B.R. 6004(f)(1) permits the debtor-in-possession to sell property of the bankruptcy estate by way of either public or private sale. Although B.R. 6004(f)(1) permits the private sale of estate property, this Court generally favors a public sale of property of the estate as opposed to a private sale. In the present case, it may be argued that, because the Property has been listed with a real estate broker since August, 1987, PSI's marketing efforts were sufficient to provide adequate exposure of the Property. *See, In re Nepsco, Inc.*, 36 B.R. at 27–28; *In re Alves*, 52 B.R. at 354. The Court would be inclined to reach this conclusion if it had been presented with some evidence that the fair market value of the Property was in the $200,000–$210,000 range established by the respective offers. However, absent such evidence, the Court simply cannot conclude that a sale of the Property to either Shamansky or Megla is in the best interest of the estate. Accordingly, the Court is inclined to follow the recommendation of counsel for Megla that this Property be sold by way of public sale.[3] Thus, the Court orders as follows:

1. That the Property be listed for public sale in at least two newspapers of general circulation (*e.g.*, The Columbus Dispatch and The Daily Reporter) no less than once a week for two consecutive weeks during the ten business days following entry of this Order;

2. That such listing state that the Property is subject to a valid real estate listing agreement and that sale of

2. Counsel for Shamansky contends that sale of Property should be ordered by the Court unless the sale price is in such disproportion to the fair market value of the Property that such sale would "shock the conscience of the Court." This contention is erroneous. The "shocks the conscience" standard referred to by Shamansky is applied by bankruptcy courts in determining whether to *set aside* a previously held bankruptcy sale. *See, In re M & M Transp. Co.*, 13 B.R. 861, 867–68 (Bankr.S.D.N.Y.1981); *In re Cossett*, 51 B.R. 166, 168–69 (Bankr.S.D.Ohio 1985) (per Clark, J.). The proper standard for determining in the first instance if a proposed sale should be ordered is whether such sale is in the best

interest of the estate. *See, In re Nepsco, Inc.*, 36 B.R. at 26–27; *In re Alves*, 52 B.R. at 355.

3. The Court is not convinced that Shamansky's contention that PSI would be in breach of contract if the proposed sale of the Property to Shamansky were not consummated is correct. Although the purchase contract by and between Shamansky and PSI does not explicitly condition sale of the Property upon approval by this Court, such approval is required as a matter of law. 11 U.S.C. § 363(b). Hence, if the sale to Shamansky is not ultimately consummated, it would be due to the order of this Court as opposed to a default on PSI's part.

**924**

the Property will be subject to a six percent brokerage fee payable to Banning;

3. That a public auction of the Property be set for no later than thirty (30) days from the date of entry of this Order, to be held either in Courtroom 126 or such other mutually convenient place as is agreed upon by the parties;

4. That counsel for PSI shall conduct the auction;

5. That counsel for PSI tender to the Court an order approving sale of the Property to the successful bidder pursuant to 11 U.S.C. § 363(b).

IT IS SO ORDERED.