**In re Jerry Joe BATT, Debtor.**

No. 10–30310.

United States Bankruptcy Court, W.D. Kentucky.

March 7, 2013.

Robert W. "Tad" Adams, III, Louisville, KY, for Debtor.

## MEMORANDUM

ALAN C. STOUT, Bankruptcy Judge.

The above-styled case comes before the Court on the Joint Motion for Entry of Order Approving Settlement and Mutual Release Agreement (the "Settlement Motion") filed by the Debtor Jerry Joe Batt ("Debtor"), Julie Apperson as Chapter 7 Trustee of the bankruptcy estate of Jerry Joe Batt ("Trustee"), Angella J. Batt ("Mrs. Batt"), Ian Batt, Derek Batt, a minor by and through his mother Angella J. Batt, Jerry J. Batt Trust, Angella J. Batt Trust, Jerry J. Batt Irrevocable Trust, and Angella J. Batt in her capacity as custodian of certain accounts (collectively the "Parties"). In the Settlement Motion, the Parties seek an Order approving the settlement and compromise of certain claims and actions (the "Settlement") as set forth in Settlement Agreement and Mutual Release, which is incorporated herein by reference. Both Fifth Third Bank ("Fifth Third") and The Huntington National Bank ("Huntington") objected to the Settlement. As discussed more fully below, the Court will approve the Settlement.

## I. Factual Background

1. Jerry Joe Batt (the "Debtor") filed a Petition for Chapter 7 relief on January 25, 2010 in the United States Bankruptcy Court for the Western District of Kentucky; that matter is styled *In re Jerry Joe Batt*, Case No. 10–30310.

2. On November 15, 2010, the Trustee filed an Objection to Debtor's Claimed Exemptions (Doc. No. 134) (the "Exemption Litigation"). The Debtor opposed the Trustee's objection to exemptions and that litigation is still pending. Trial on this matter is scheduled to begin on April 2, 2013.

3. On June 30, 2010, Huntington filed an adversary proceeding against the Debtor seeking to deny the Debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5) and to except the debt owed to it by the Debtor from discharge pursuant to 11 U.S.C. § 523(a)(6) (the "Huntington Discharge Litigation"). The Debtor answered the complaint denying the allegations alleged by Huntington and litigation in this adversary proceeding has continued to date. Trial in this matter is scheduled to begin on April 2, 2013.

4. On November 17, 2010, the Trustee initiated an adversary proceeding against the Debtor seeking to deny a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(5), (a)(6) and/or (a)(7). (A.P. No. 10–3091) (the "Discharge Litigation"). The Debtor answered the complaint denying the allegations alleged by the Trustee. Litigation in this adversary proceeding has continued to date. Upon motion by the Trustee, on June 20, 2012, the Court consolidated this action with the Huntington Discharge Litigation. As with the Huntington Discharge Litigation, trial in this matter is scheduled to begin on April 2, 2013.

5. On August 29, 2011, the Trustee filed an adversary proceeding against Mrs. Batt, the Batts' three sons, Ian, Derek and Drew, as well as the trusts created by the Batts and thereafter amended (collectively the "Batts") seeking recovery of alleged preferential transfers, alleged fraudulent transfers, turnover of property of the bankruptcy estate, damages, equitable relief and a declaratory judgment. (A.P. No. 11–3052) (the "Avoidance Litigation"). The Batts answered the complaint denying the allegations alleged by the Trustee and requesting a trial by jury. Litigation in this adversary proceeding has continued to date and, as of yet, there is no trial date set for a trial to commence.

6. On January 24, 2012, the Trustee filed an adversary proceeding against Paul Haye, Heritage Planners, New York Life Insurance Company, New York Life Insurance Company of Arizona, and New York Life Insurance and Annuity Corporation. (A.P. No. 12–3011) (the "New York Life Litigation"). The Trustee sought to recover preferential transfers and fraudulent conveyances related to boats, jet skis and insurance premium payments, and to obtain the cash surrender value of certain life insurance policies. The Defendants in this action (the "New York Life Defendants") answered denying the allegations alleged by the Trustee and asserting several affirmative defenses. Litigation in this adversary proceeding has continued to date. Discovery in this action is not yet complete, and, as of yet, there is no trial date set for a trial to commence.

7. On January 24, 2012, the Trustee filed an adversary proceeding against Huntington and other related entities. (A.P.12–3012) (the "Huntington Litigation"). The Trustee sought to recover property conveyed in fraud of creditors, for turnover of property, for disallowance of claims, and for equitable subordination. The Huntington entities all answered and litigation in this adversary proceeding has continued to date.

8. Over the course of two years, and after five (5) separate mediation sessions with the Honorable Thomas H. Fulton, United States Bankruptcy Judge for the Western District of Kentucky, the Parties were able to reach a global settlement of the litigation between themselves.

9. On January 22, 2013, the Parties filed this Settlement Motion seeking approval of the Settlement.

10. Some of the terms of the Settlement include:

 a. The Debtor and Mrs. Batt jointly would pay a total sum of Three Hundred Fifty Thousand Dollars ($350,-000.00) into the Court's Registry within thirty (30) days after entry of an Order approving this Agreement. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, the funds would be released to the bankruptcy estate.

 b. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, the Parties

would file all pleadings necessary to dismiss or withdraw with prejudice any and all claims, appeals, litigation and proceedings pending between the Parties, including, but not limited to, the following adversary proceedings which would be dismissed with prejudice: the Discharge Litigation (10–3091), the Avoidance Litigation (11–3052), the New York Life Litigation (12–3011).

c. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, the Trustee would withdraw with prejudice her objections to the exemptions claimed by the Debtor in the main bankruptcy case (the Exemption Litigation).

d. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, the Trustee would withdraw all claims, motions and documents that in any way seek the turnover of any kind of any asset from the Debtor, Angella J. Batt, their respective trusts and amended trusts, and the Batts' three sons, Derek Batt, Ian Batt and Drew Batt, which includes but is not limited to the pursuit of any account held in any of these parties' names whether held singly, jointly, or in a custodial capacity.

e. With a qualified exception, the Trustee would not take or join in any further action to oppose the discharge of the Debtor.

f. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, the Trustee would assign to the Debtor or his designee all rights, title and interest in the claims and causes of action in the Huntington Litigation (12–3012), including, but not limited to, the right to seek leave to amend the complaint. The Trustee did not warrant that such claims or causes of action were assignable.

g. Within ten (10) days after entry of a final and non-appealable Order approving the Settlement, all funds currently held in the Trustee's escrow account would be released to the bankruptcy estate free and clear of the claims of any of the Debtor or the Batts. Such funds include, but are not limited to, those subject to the Agreed Order entered on March 21, 2011, relating to the Section 529 Account Funds (Doc. No. 191) and the Order entered on February 9, 2011, relating to the 2009 tax refunds (Doc. No. 182).

h. Notwithstanding the full mutual releases contained in the Settlement, the Debtor and Mrs. Batt reserved the right in their sole discretion to file any objections to any fee applications filed in the main bankruptcy case.

i. Notwithstanding the full mutual releases contained in the Settlement, the Trustee retained the right to seek leave of Court to file amended federal, state(s) and local(s) 2009 tax returns for the Debtor for the purpose of attempting to obtain tax refunds due the bankruptcy estate, if any. The Batts reserved the right to object to any such motion and all arguments with respect to such objections are preserved. The tax amendment(s) would only relate to the Debtor's finances and the Trustee would not take any action that will cause Mrs. Batt to incur additional 2009 income tax liability or 2009 income tax expense.

11. Huntington objected to the Settlement Motion. Generally, Huntington contends that the Settlement is not fair and

equitable, and thus, it should not be approved. Huntington also raised several specific objections to the Settlement, including:

 a. With respect to the Discharge Litigation, Huntington contends as a general matter that it is not appropriate to permit the Trustee to settle a § 727 denial of discharge action in exchange for a cash payment from the Debtor. *Citing In re Levine,* 287 B.R. 683 (Bankr.E.D.Mich. 2002). Moreover, Huntington contends the denial of discharge and dischargeability issues are not complex and that the majority of the costs related to these claims have already been incurred by the Trustee. Huntington points out that the trial in this case has been scheduled in early April so there is no inconvenience or delay in moving the litigation forward. Finally, Huntington contends the proposed payment of $350,000 is an inadequate amount in exchange for a discharge particularly given the alleged conduct of the Debtor. Considering the amount of the administrative expenses already incurred in the case, Huntington believes it is unlikely any of the Settlement will reach the Debtor's creditors.

 b. With respect to the Avoidance Litigation, Huntington contends the Trustee has not conducted the appropriate due diligence to make an informed decision about the likelihood of recovery in this action. Huntington believes the Trustee's information is lacking as to financial condition of the Batts.

 c. With respect to the New York Life Litigation, Huntington believes there is a strong likelihood of success as to these claims. Huntington contends there is no reasonable basis for including this adversary in the Settlement, and the Settlement simply further reduces the likelihood of recovery by creditors.

 d. With respect to the Exemption Litigation, Huntington believes the majority of the costs related to this litigation have already been incurred by the Trustee. Huntington contends that should the Trustee prove successful in this litigation, collection against the Debtor would not be difficult.

 e. Finally, with respect to the assignment of the Huntington Litigation, Huntington states there are questions as to whether or not the assignment is appropriate, and in fact whether or not the claims can be assigned.

12. Fifth Third also objected to the Settlement Motion. According to the objection, Fifth Third is the Debtor's third largest creditor, holding an unsecured claim in excess of $4,300,000.00. Like Huntington, Fifth Third does not believe that the proposed Settlement is fair and equitable for the same reasons as stated by Huntington.

13. The United States Trustee's Office ("UST") did not object to the Settlement.

14. The Court held a hearing on the Settlement Motion on February 19, 2013. Counsel for all the Parties, Fifth Third, and Huntington appeared and presented evidence. The UST also appeared, but did not present evidence.

15. The Trustee testified that this case and related adversary proceeding are some of the most contentious, complex, and challenging cases she has handled in her many years since serving as a Chapter 7 Trustee.

16. The Trustee testified that she undertook efforts to discover the Batts' current financial information, but that she met resistence from the Debtor and the Batts on this endeavor. She was able to depose the Debtor, Mrs. Batt, as well as Batts's accountants with respect to their financial condition. On cross examination from Huntington, the Trustee admitted her information as to the Debtor and the Batts current financial information was limited.

17. With respect to the Avoidance Litigation, the Trustee believed she had a strong case in that the badges of fraud appeared evident from the transactions. She also recognized there was a risk that she would not prevail in the action. The Trustee believed that this action would have to be tried before a jury and that it would have to be tried in United States District Court for the Western District of Kentucky, which would involve a significant delay and additional costs. Furthermore, the Trustee was concerned that a separate tribunal increased the chance of inconsistent results between the findings in the District Court case and the other litigation remaining in the bankruptcy court. This consideration would make an already complex case even more challenging and expensive. Moreover, she fully anticipated an appeal being taken to any jury verdict, which would also add to the time and costs involved in pursuing these claims. Even assuming she prevailed at trial, and was successful in the subsequent appeals, the Trustee believed she would also have difficulty collecting upon any judgment. This conclusion was based upon the existence of several trusts holding assets for the Batts and the fact that the Debtor, the Batts, and the trusts were all located in Ohio. She testified that the costs involved with collection and the time it would take to recover any assets played a significant role in her decision to enter into the Settlement with the Debtor and the

Batts. She believed in her business judgment it would be in the best interests of the bankruptcy estate to settle the matter at this juncture in time.

18. With respect to the Discharge Litigation, while acknowledging that there was a risk she would not prevail, the Trustee believed she possessed a strong claim in this adversary proceeding. However, like the fraudulent transfer case mentioned above, the Trustee believed there would be a significant delay before any final judgment would be entered, in that she also expected an appeal from any adverse ruling. She was also cognizant of the Huntington Discharge Litigation, wherein Huntington was prosecuting its own § 727 action against the Debtor. On cross examination by Huntington, the Trustee stated she was aware that the Huntington § 727 action was not identical to her § 727 action, and that it did not include all of the claims she had alleged in her own action. Finally, she testified that she would have carved this action out of the Settlement, but that the Debtor and the Batts would not agree to any settlement that was not global in nature. Thus, she agreed to settle this matter, along with the other matters, under the terms set out above.

19. With respect to the New York Life Litigation, the Trustee believed that the case was not as attractive now as when she filed the action. She testified that she believed the Debtor had transferred assets which she believed at the time of the filing to have a value somewhere around $90,000.00. She later learned, however, that the assets transferred were only worth about $15,000.00. Based upon this possible reduced recovery, the Trustee felt comfortable in concluding that the Defendants in this action had not received a windfall. This asset calculation, however, did not include the approximate $95,000.00 in insurance policy proceeds also sought in

this action. The Trustee also believed that any trial in this action was at least a year away. Upon examination by counsel for the New York Life Defendants, the Trustee stated that she did not believe the Defendants were the entities that actually received the alleged fraudulent transfers alleged in that action. Counsel for the New York Life Defendants also noted to the Court a recent case from the Eastern District of Kentucky, *GATX Corp. v. Addington,* 879 F.Supp.2d 633 (E.D.Ky.2012), which held that under fraudulent transfer actions, liability cannot attach to non-transferees.

20. With respect to the Exemption Litigation, the Trustee believed she had also made a strong case. Her argument, however, rested upon the application of a case from the First Circuit Court of Appeals, and being able to surcharge the Debtor's exemptions. The Trustee believed she could prevail, but acknowledged she could lose all or part of her argument with respect to the exemption objection. The Trustee testified that, as with the other cases, she fully anticipated an appeal being filed to any adverse decision by this Court on the exemptions issue. She was concerned with the delay and costs of the appeals that she expected if the case proceeded any further. As with the Discharge Litigation, the Trustee testified that she tried to carve this action out of the Settlement, but that the Debtor and the Batts insisted upon a global settlement, which would include the Exemption Litigation.

21. With respect to the term of the Settlement calling for her to assign her rights in the Huntington Litigation, she testified that she questioned whether the case could be assigned to the Debtor, but since the Debtor and the Batts insisted that it be included, she agreed to the assignment. She stated that it was in the best interest of the bankruptcy estate to transfer the adversary proceeding, to get the case closed and administered. On cross examination from Huntington, the Trustee admitted that the assignment of the Huntington Litigation to the Debtor and the Batts would not actually close the case, but would simply substitute the Debtor and the Batts for her, and that the litigation would proceed. She also testified that she was not certain how much the Huntington Litigation was actually worth to the bankruptcy estate and that she had not placed a specific dollar valuation on this action.

22. The Trustee testified that her reservation of her the right to pursue a tax refund for the bankruptcy estate could be worth as much as $300,000.00.

23. While the Trustee admitted to discussing the Settlement with Huntington and that at one time Huntington was involved in the mediation process, she testified that she had not spoken to or consulted with any other specific creditors. When asked if any creditors had filed a pleading or spoken with her in favor of the Settlement, the Trustee indicated that she has had no such contact, but also pointed out that only two creditors, Huntington and Fifth Third, actually filed a pleading in opposition to the Settlement.

24. The Trustee also testified that the Settlement would allow her to keep the funds already in her possession, including insurance proceeds and funds she had collected from the 529 education accounts for the Batt children. The Settlement would allow these disputes to be resolved without any further attorney fee costs to the bankruptcy estate. These disputes had been highly contentious, with Mrs. Batt going so far as to file a motion for sanctions against her counsel in connection with the insurance proceeds turnover motion.

25. The Trustee also admitted she was uncertain as to the total administrative costs incurred to date. Specifically, she was unaware of the total amount of fees her counsel had incurred since his last fee application. She was also unable to present an estimate of the costs that would be incurred if the Court were not to approve this Settlement. This inability was based, at least in part, on her inability to estimate the future appellate costs she was sure would be incurred if this litigation continued.

26. With the funds from this Settlement, as well as the other litigation involved in this case, the Trustee testified she expected the unsecured creditors in this case to receive a small distribution. She qualified this statement by indicating that the distribution would be small in comparison to the $42 million dollars in unsecured claims actually filed in the case. Upon cross examination by Huntington, the Trustee admitted she could not provide an accurate range of any distribution because she was unsure of the total amount of administrative expenses that had been incurred.

27. As stated above, upon cross examination by Huntington, the Trustee admitted her information as to the Batts financial condition was limited. She lacked information, and what information she did possess, was somewhat dated. The Trustee's due diligence as to the Batt children was also very limited.

28. The Trustee also testified that even with this global compromise, she may still incur attorney fees over the tax refund that she reserved as part of the Settlement. Having said that, she stated she expected the disputes with the Debtor and the Batts to be less contentious if the Court approved the Settlement.

29. The Trustee also testified that she believed the Batts were financing the litigation in these cases from the funds that would be available for recovery if she were to prevail in all the litigation. Considering the contentious nature of the cases, and probable appeals, she believed these funds would be significantly reduced at the time that any final judgments would be entered. Thus, the assets that would be available for collection would be significantly minimized.

30. The Trustee testified that due to the global nature of the Settlement, it would be impossible to put a dollar figure on each specific part of the Settlement and that the Settlement had to be considered on the whole.

## II. Legal Discussion

 Generally speaking, the law favors compromise and not litigation. *In re Fishell,* 47 F.3d 1168 (6th Cir.1995) (*citing In re A & C Props.,* 784 F.2d 1377 (9th Cir.1986)). To facilitate this policy, Bankruptcy Rule 9019(a) authorizes a trustee to seek a compromise or settlement of claims, upon motion and after notice and a hearing. Fed. R. Bankr.P. 9019(a). The purpose of such a compromise agreement "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A & C Props.,* 784 F.2d 1377, 1380–81 (9th Cir.1986). The bankruptcy court is charged with an affirmative obligation to apprise itself "of all facts necessary to evaluate the settlement and make an 'informed and independent judgment'" as to whether the compromise is fair and equitable. *LaSalle Nat'l Bank v. Holland (In re Amer. Reserve Corp.),* 841 F.2d 159, 162–63 (7th Cir.1987) (*quoting Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).

■ The United States Supreme Court has instructed bankruptcy courts engaged in making such determinations to "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry, Inc.*, 390 U.S. at 424, 88 S.Ct. 1157. From this directive, federal courts have developed four separate factors a bankruptcy court should consider when determining if a compromise or settlement should be approved. These factors are as follows: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

■ "Whether a compromise should be accepted or rejected lies within the sound discretion of the Court." *In re Planned Systems, Inc.*, 82 B.R. 919, 921 (Bankr.S.D.Ohio 1988). A court may consider the objections of other creditors or parties in interest, but the objections are "not controlling and will not prevent approval by the Court." *In re Carson*, 82 B.R. 847, 852 (Bankr.S.D.Ohio 1987). The Court must ultimately "canvass the issues in order to determine whether the settlement *'falls below the lowest point in the range of reasonableness.'* " *Id.* at 853 (emphasis added) (*quoting Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.1983)).

## 1. Probability of Success

■ With respect to the first prong to consider, the probability of success on the merits, the Court must estimate both the value of the proposed Settlement and the likely outcome of litigating the claims proposed to be settled. *In re Telesphere Communications, Inc.*, 179 B.R. 544 (Bankr.N.D.Ill.1994). In this case, this task is somewhat more difficult considering the diversity of the issues involved and the global nature of the Settlement. The Trustee has many hurdles to overcome in all of these cases, including, but not limited to, proving fraudulent intent on behalf of the Debtor. While this is not an insurmountable hurdle, it also not one that is undertaken lightly. While the Court believes the Trustee has a strong probability of prevailing on some of her claims, other claims are far more tenuous.

■ The Court must also weigh the future benefits of the Settlement against the likelihood of success of future collection litigation against the Debtor, the Batts, and the New York Life Defendants, while considering the complexity and protracted nature of that potential litigation. The benefits of the Settlement are incontrovertible. Through the Settlement, the bankruptcy estate is receiving a cash infusion and being allowed to retain funds that are currently being held by the Trustee subject to very contentious proceedings. The Settlement will also protect the bankruptcy estate from the extraordinary administrative expense of litigating multiple adversary proceedings in multiple forums over the course of an undeterminable number of years. Moreover, as the Trustee testified, the Batts would be funding any continuing litigation from assets that would be available for collection. This Settlement will permit the Trustee to focus her resources on pursuing any remaining assets the bankruptcy estate may possess. Ultimately, the Settlement will lead to a quicker wind-down of the Chapter 7 case,

and—more importantly—a quicker and more certain distribution to creditors.

Conversely, the success rate of complex and protracted future litigation against the Debtor, the Batts, and the New York Life Defendants is largely uncertain. As the Trustee testified, she had asserted what she believed to be strong claims against the various parties in the main case and related adversary proceedings. However, the Debtor and the other defendants had also presented viable defenses to those claims.

Based on the Court's review of the record, the likelihood that the Trustee would have succeeded on all of the contested issues is remote at best. In fact, to succeed on all of the claims in all of the actions and obtain a final monetary judgment of any value seems highly improbable to this Court. Thus, this factor weighs in favor of approving the Settlement Motion.

## 2. Difficulties of Collection

Next, the Court must consider what, if any, difficulties the Trustee would face in collecting any judgment the bankruptcy estate might obtain. The main problem with collection stems from the Debtor's and the other Defendants' ability and willingness to sustain the litigation over an extended period of time. Specifically, the Debtor and the other Defendants, could, and likely would, frustrate the Trustee's ability to collect any judgment by pursuing appeals. The Trustee testified that she fully expected the Debtor and the other Defendants to pursue an appeal of any adverse judgment. The Trustee testified, and this Court would agree, that the issues involved in these matters have been highly contested, and, at times, the parties (or at least their counsel) have been somewhat belligerent towards each other. As such, the Trustee expectation of appeals is an

extremely reasonable expectation in these cases. Moreover, considering the variety of issues and the multiple forum issue, the appellate process could—and likely would—take several years to complete.

The Court must also consider that any efforts at collection would have to take place in Ohio, the place where the Debtor, the Batts, and their assets are mostly located. Again, while this is not an insurmountable obstacle, it is nevertheless an obstacle making any collection efforts by the Trustee more difficult, timely and costly for the bankruptcy estate. Finally, the Court is also mindful that one or more of the other Defendants, namely Mrs. Batt and/or the Batt children, could file their own bankruptcy case in Ohio, which would further hinder and delay any collection efforts by the Trustee. On the whole, this factor weighs in favor of approving the Settlement Motion.

## 3. Complexities of the Litigation, Expense and Delay

The Court also must evaluate the complexity of all litigation between the Parties, including the expense, inconvenience and delay that would result if all of these cases were to proceed to trial. There can be no dispute that the issues being settled, taken as a whole, are somewhat complex. The Trustee testified that this case has been one of the most complex, difficult cases that she has handled since becoming a trustee. The Court agrees that this case is far from a "normal" bankruptcy case. From the Exemption Litigation to the New York Life Litigation, these cases will not be easy or inexpensive to prosecute or collect upon. To put it simply, there are a multitude of moving pieces involved in these cases. Adding a second forum in the District Court, with a jury trial, adds to the complexity, and also adds the unwanted wrinkle of possible inconsistent results.

With the complexity question, the Court must also consider the expense and delay. *Fishell v. Soltow (In re Fishell)*, 47 F.3d 1168, 1995 WL 66622 at *4 (6th Cir.1995) ("The fact-intensive nature of the dispute also means that any litigation would be time-consuming and expensive."). As Huntington noted at the evidentiary hearing, if the proposed Settlement is not approved, the Discharge Litigation and Exemption Litigation is set to begin in April, 2013. On the other hand, neither the Avoidance Litigation or the New York Life Litigation is currently set for trial. The Trustee testified that trial in the Avoidance Litigation is at least a year away. The discovery in the New York Life Litigation has just began. While this Court prides itself on its ability to expeditiously schedule and conduct trials, any trial on this litigation is at least six months to a year away.

These time frames just mentioned do not even account for the anticipated appeals that the Trustee testified she expected the Debtor and the other Defendants to file in the event they did not prevail. When these probable appeals are factored in, the delay is extended for several more years. Thus, from a delay standpoint, this factor clearly weighs in favor of approving the Settlement.

With respect to the expense issue, in its objection, Huntington argued that most of the expenses for this litigation have already been incurred, this Court disagrees. While the discovery costs have been incurred in the Discharge Litigation and the Exemption Litigation, these costs do not include the costs for preparing for a lengthy trial or conducting the actual trial itself. Based upon representations from the parties, the Discharge Litigation and Exemption Litigation is expected to take several days.

Of course, the Court must also consider the costs associated with the other litigation that will be settled in this compromise. The Avoidance Litigation and the New York Life Litigation are also being resolved in this in Settlement Motion. While some of the discovery may overlap, the Court fully anticipates more discovery being needed by all the parties before this other litigation is ready to be tried.

The costs incurred also do not include the costs of the expected multiple appeals, which could be substantial. Nor do the costs incurred include the costs of pursuing collection. As stated above, any collection must take place in Ohio, which will necessarily require the Trustee to employ Ohio collection counsel. For these reasons, the Court finds that the expense involved with continuing these actions weigh heavily in favor of approving the Settlement. *In re Bard*, 49 Fed.Appx. 528 (6th Cir.2002) ("[T]he court's recognition of the expense, inconvenience, and delay inherent in any trial of the employment dispute ... supports the ultimate conclusion of the bankruptcy judge to grant the motion to accept the compromise."); *In re Carson*, 82 B.R. 847, 854 (Bankr.S.D.Ohio 1987) (The third prong of the Rule 9019 settlement test weighed heavily in favor of compromise because, "the estate [would] be required to bear the burden of an expensive, protracted and complex legal proceeding.... Given the *problematic nature of a possible recovery, it would certainly be unwise to 'roll the dice' at trial in the hope of gaining a higher recovery*....").

### 4. Interests of Creditors and Deference to Their Views

Finally, the Court turns to the fourth factor to consider, the interest of the creditors and a proper deference to their reasonable views. As noted above, Huntington and Fifth Third do not support

this Settlement. Settlements, however, are part and parcel of bankruptcy proceedings. "[I]t is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3rd Cir.1996). The Trustee is charged with representing the interests of the bankruptcy estate and its creditors. The Trustee's decisions are somewhat protected by the "business judgment rule," which could be better described as a rebuttable presumption rule. *See In re Dalen*, 259 B.R. 586 (Bankr.W.D.Mich.2001) (the application of the business judgment rule was addressed with respect to the Rule 9019(a) approval of a settlement). This rule protects a disinterested trustee so long as any decision falls within the range of what an informed businessman would have rationally decided under the circumstances. This Court is always reluctant to disregard the business judgment of the Trustee with respect to the settlement or compromise of the bankruptcy estate's claims, as it is that Trustee who is more knowledgeable of the strengths and weaknesses of their cases. Moreover, this agreement does not have to be an agreement the Court would enter, but must simply be above the lowest point in the range of reasonableness. *In re Carson*, 82 B.R. 847, 852 (Bankr.S.D.Ohio 1987). This Settlement satisfies this requirement.

As already addressed, the economics of this case and the uncertainty of future litigation strongly suggest that the Settlement is in the best interests of creditors. The Court acknowledges that Huntington, Debtor's largest creditor, and Fifth Third, the Debtor's third largest creditor, oppose the Settlement, despite the Trustee's belief that continuing the litigation would be both time consuming and expensive for the bankruptcy estate as a whole.

Huntington seemed to take support in its objection by the fact that no creditors have indicated that they support the Settlement. This position ignores the fact that, other than Fifth Third, no other creditors of the bankruptcy estate objected to the Settlement, despite being provided notice of the Settlement and time to file a response. The fact that no party actually incurred the expense to file a pleading in support of the Settlement does not sway the Court to disapprove the proposed Settlement. Along this same line, the Court will also note again, that the UST, which may appear and be heard on any issue in any case or proceeding, did not object to the proposed Settlement. 11 U.S.C. § 307.

The Court will now address some of Huntington's specific objections. First and foremost, Huntington has made allegations that the Debtor is "buying his discharge" with this Settlement. Huntington contends that because the Debtor will pay funds to the Trustee, he is getting a free pass to a bankruptcy discharge. This contention is inaccurate for several reasons.

▆ First, under this theory, no § 727 action could ever be settled, because any settlement or compromise would in essence be a "buying of a discharge." Consequently, every § 727 action would then have to proceed to trial. The Court does not support this position, and believes, § 727 actions, like other actions, may be settled or compromised under the proper circumstances. The Court notes that this Court's predecessor, Judge Stosberg, entered an opinion on this very issue. *In re Johnston*, 2007 WL 1239199 (Bankr. W.D.Ky.2007). In *Johnston*, Judge Stosberg rejected any *per se* rule banning § 727 settlements as unduly restrictive. The fundamental principle in favor of settlements should not be hindered simply

due to the fact that the action being settled qualifies as a § 727 action. *See also In re Sheffer,* 350 B.R. 402, 406 (Bankr. W.D.Ky.2006) (authorizing settlement of § 727 actions); *Wolinsky v. Maynard (In re Maynard),* 269 B.R. 535 (D.Vt.2001) (settlement of § 727(a) proceeding is within discretion of the court), *rev'g, Wolinsky v. Maynard (In re Maynard),* 258 B.R. 91 (Bankr.D.Vt.2001); *In re Bates,* 211 B.R. 338 (Bankr.D.Minn.1997) (rejecting *per se* rule barring settlement of § 727(a) actions). This Court is in complete accord with Judge Stosberg's position on this issue and holds that there is no *per se* rule against settlement of § 727 actions.

The second problem with Huntington assertion that the Debtor is "buying his discharge" is that this Settlement in no way assures that the Debtor will receive a discharge. As Huntington well knows, it is pursuing its own § 727 claims against the Debtor in the Huntington Discharge Litigation, and, if successful, the Debtor's discharge will be denied. Thus, in this Settlement, the Debtor is not "buying his discharge" as Huntington claims, but instead is simply settling global litigation with the Trustee that includes a § 727 claim. The ultimate fate of the Debtor's discharge is not known at this time, and will not be known until Huntington's own § 727 action is concluded.

Huntington next contends that the Trustee has not conducted enough due diligence with respect to the Debtor and the Batts financial circumstances to make an informed decision about her chances of recovery. While the Court agrees that the Trustee was less than articulate in her testimony as to this point, she did testify that she had deposed both the Debtor, Mrs. Batt, and their accountants with respect to their financial condition. The Trustee testified that she had made the necessary due diligence as to this issue,

and the Court has no reason to question or doubt her credibility on this point.

Huntington also takes issue with including the New York Life Litigation in the Settlement. It contends that the Trustee has a very strong probability of success in this case, and that there is no reasonable basis for including this adversary in the Settlement. Huntington would be correct except that the Trustee testified that the inclusion of this adversary in the Settlement was a required by the Debtor and the Batts. This is a global settlement, involving multiple claims throughout multiple adversary proceedings and main case litigation. The Court is sure the Trustee would have liked to cherry pick which of the individual cases would proceed and which would settle, however, this was not an option available to the Trustee. The Debtor and the Batts required this particular term in the Settlement, and the Trustee assented to its inclusion in the Settlement. The Court is unwilling and unable to dissect out this particular term.

Finally, Huntington questioned whether the Trustee has the authority to assign her claims in the Huntington Litigation to the Debtor and the Batts. The Court shares this concern. Nevertheless, that problem belongs to the Debtor and the Batts, not the Trustee or the Court (at least not yet). Should Huntington challenge this assignment and its legality, the Court will address that issue in due course. It may be that the Debtor has obtained a worthless asset with this Settlement. Conversely, the Court may find such an assignment proper and enforceable, at which time the Debtor would then possesses, at least arguably, an asset of some value. In any event, just because this assignment may not ultimately result in a recovery by the Debtor, this is not a sufficient justification for denying approval of the Settlement Motion.

As stated above, on the whole, bankruptcy court should consider the objections lodged by parties in interest, but these objections are not controlling. *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y.2006). In this case, notwithstanding the objections filed by Huntington and Fifth Third, the Court will approve the Settlement Motion.

### III. Conclusion

In this Court's informed and independent judgment, the Settlement is in the best interests of the bankruptcy estate. The Court concludes that the Settlement is both fair and equitable. Under the totality of the circumstances, the four factors for the Court to consider when ruling upon motions to compromise compel the Court to approve the Settlement Motion. The Settlement was the product of an arm's-length bargain, reached after multiple mediation sessions conducted by a bankruptcy judge. The benefits of the Settlement outweigh the attenuated possibility of a significantly increased net recovery after years of complex and protracted litigation. The Settlement will provide for quicker distributions to creditors, at lower risk, and with significantly less administrative expenses. Furthermore, most creditors, support the Settlement, or, more accurately, did not file an objection to the Settlement. In this Court's opinion, the benefits to this bankruptcy estate from the Settlement are well above the lowest point of reasonableness, and the Settlement conforms to the general principle that settlements are favored in bankruptcy proceedings. The Court finds that Trustee has exercised sound business judgment and will, accordingly, approve the Settlement Motion. Huntington and Fifth Third's objections are overruled. The Court has entered an Order this same date in accordance with the holding of this Memorandum.

### ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

It is hereby **ORDERED** that the Joint Motion for Entry of Order Approving Settlement and Mutual Release Agreement is **APPROVED**.

It is further **ORDERED** that Huntington and Fifth Third's Objections are **OVERRULED**.